JOAQUÍN GALLART MENDÍA, en su carácter de Administrador del FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., y JACINTA FIGUEROA COLÓN VDA. DE PENSORT, por sí y en representación de su hija MILDRED SANTIAGO REVERÓN, recurridos.

*Número:* 599    *Resuelto:* 8 de junio de 1962

*Donald R. Dexter* y *Carmen Ana Archeval,* abogados del recurrente; *Emilio E. Rodríguez Colón,* abogado de Jacinta Figueroa Vda. de Pensort.

Sala integrada por el Juez Presidente señor Negrón Fernández y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El Administrador del Fondo de Seguro del Estado presentó una solicitud para que se revisara la resolución de la Comisión Industrial por la cual se reconoció el carácter compensable, como accidente del trabajo, de la muerte del obrero Samuel Pensort Warren. Fundamenta su petición en el hecho de que "en esta jurisdicción y a los efectos de determinar la compensabilidad en un caso de muerte por enfermedad del corazón es necesario probar que al momento de la ocurrencia del accidente que ocasionara la muerte, el obrero o empleado ha realizado una labor física intensa, equivalente a un esfuerzo extraordinario." En efecto, y hasta que emitimos nuestra opinión en *Vda. de Fernández* v. *Comisión Industrial,* 85 D.P.R. 298 (1962), la norma más frecuentemente aplicada era la expuesta por el Administrador, pero desde entonces enunciamos que la misión del organismo administrativo en su función de adjudicar sobre la compensabilidad de un accidente cardíaco "debe limitarse a determinar la existencia de una relación de causalidad entre la labor realizada y el resultado final—incapacidad o muerte—o sea, si la labor contribuyó al resultado mediante la agravación, aceleración o precipitación de la enfermedad". Y añadimos que no procedía hacer distinción

618

alguna entre el grado de esfuerzo, *aunque siempre es necesario que se haya realizado alguno*. Parece conveniente subrayar que todas las muertes debidas a afecciones cardiacas no son compensables y que es indispensable que se establezca con razonable probabilidad la existencia de la relación causal apuntaba. Así, a partir de la decisión de *Vda. de Fernández*, cuando la prueba revela que el deceso sobreviene debido al desarrollo natural y en el curso normal de la enfermedad cardiaca, sin conexión razonable con el esfuerzo y labor realizados, hemos sostenido que no pueden concederse los beneficios de la ley a los dependientes del empleado fallecido, *Núñez Rivera* v. *Comisión Industrial*, 85 D.P.R. 379 (1962) ; *Vda. de Cuquerella* v. *Comisión Industrial*, 85 D.P.R. 516 (1962) ; *Vda. de Valls* v. *Comisión Industrial*, 85 D.P.R. 611 (1962) ; cfr., *Vda. de Cruz* v. *Comisión Industrial*, 85 D.P.R. 613 (1962).

El obrero Samuel Pensort Warren, quien contaba aproximadamente 70 años de edad, se dedicaba al oficio de jornalero en la industria de la construcción. Trabajaba durante los siete días de la semana, y los sábados y domingo laboraba en la construcción de hogares del programa de ayuda mutua conocido como Comunidad Luis Manuel Cintrón. El día 30 de abril de 1960 comenzó a trabajar a las siete de la mañana, y en compañía de otros dos obreros, se dedicó a acopiar materiales para la edificación que levantaban y a ayudar en la mezcla de hormigón. Los materiales se encontraban almacenados en un sitio distante de la obra. Su primera actividad fue transportar dos sacos de cemento de 100 libras cada uno en una carretilla desde el lugar en donde estaban almacenados. La conducción, que tomó entre 30 y 50 minutos, era sobre un terreno accidentado, lleno de hoyos, zanjas y piedras. Luego realizó otro viaje con la carretilla llena de piedra. Las personas que lo observaron lo vieron muy acalorado, pues se trataba de un día en que el sol brillaba intensamente. Sudaba copiosamente. Al acercarse a la obra, se

desplomó. Fue recogido y trasladado a una casa cercana en donde falleció cerca de las nueve y media de la mañana. Sin haberse practicado autopsia, y a base de los hallazgos clínicos y la información suministrada sobre las circunstancias que rodearon la muerte, se certificó ésta como causada por dilatación cardiaca y trombosis coronaria. Su esposa declaró que era un hombre fuerte, "nunca se había enfermado," ni tampoco había acusado síntomas de dolencias cardiacas. ■

No hay duda de que al momento de la muerte del obrero éste realizaba una labor que estaba acostumbrado a ejercitar y que para ello desplegaba el esfuerzo físico, común y corriente. El cuadro de los hechos es a primera vista compatible con la posibilidad de que el desenlace fatal de su enfermedad llegó durante las horas laborables, pero hay una circunstancia significativa que traslada este caso de la línea meramente fronteriza al campo de la compensabilidad. Este factor es el calor intenso que imperaba mientras el obrero realizaba su labor, y que en opinión del perito de la parte reclamante, podía precipitar el ataque final que puso fin a su vida. La apreciación de las circunstancias concurrentes nos lleva a la conclusión de que la labor realizada bajo condiciones tan desfavorables—por el calor imperante—agravó la condición idiopática del obrero que no había tenido hasta entonces manifestaciones externas, o sea, que la muerte del occiso ocurrió antes de lo que hubiese normalmente sucedido. ■

Se ha sostenido que es compensable una muerte del corazón por la agravación de una enfermedad preexistente por las condiciones en que el obrero ejecuta su labor que le producen un estado de postración debido al calor o alta temperatura. *Plastic Assembled Products, Inc.* v. *Benkoe*, 167 A.2d 589 (Md. 1961); *Cutno* v. *Neeb Kearney & Company*, 112 So.2d 628 (La. 1959); *Reynolds Metals Company* v. *Robbins*, 328 S.W.2d 489 (Ark. 1959); *Cuiba* v. *Irvington Varnish & Insulator Co.*, 141 A.2d 761 (N.J. 1958); *La-*

*clede Steel Company* v. *Industrial Commission*, 128 N.E.2d 718 (Ill. 1955); *Tri-States Construction Co.* v. *Worthen*, 274 S.W.2d 352 (Ark. 1955); *Harding Glass Co.* v. *Albertson*, 187 S.W.2d 961 (Ark. 1945); *West* v. *Phillips*, 288 N.W. 625 (Iowa 1939); *Baltimore & O.R. Co.* v. *Clark*, 59 F.2d 595 (C.C.A. 4, 1932). De particular interés es el caso de *Reynolds Metals, supra*, en el cual se sostuvo la compensabilidad a pesar de que se demostró que el ataque cardiaco había comenzado antes de que el obrero hubiese empezado su labor diaria, pero que se agravó porque éste reanudó su trabajo en un lugar sumamente caluroso. Véanse, McNiece, *Heart Disease and the Law* (Prentice-Hall, 1961), págs. 39–40; Trauma (Dic. 1961), págs. 70–71. Cfr. *Montaner* v. *Comisión Industrial*, 54 D.P.R. 722 (1939).

*En virtud de lo expuesto se confirmará la resolución dictada por la Comisión Industrial en 24 de enero de 1961.*