JUSTINO RIVERA CRUZ, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, demandada.

*Número:* CI-64-22    *Resuelto:* 12 de abril de 1965

*Darío Collazo Nuin,* abogado del recurrente; *Donald R. Dexter, Guillermo Méndez Muñoz* y *Miguel A. Guzmán Soto,* abogados del Fondo del Seguro del Estado.

Sala integrada por el Juez Presidente Interino Señor Pérez Pimentel y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

PER CURIAM: La evaluación hecha por el psiquiatra consultor doctor Fernando Cabrera en relación con el recurrente Justino Rivera Cruz es que presentaba una "reacción esquizofrénica, no diferenciada, crónica." Tal evaluación está precedida de las siguientes conclusiones: "Al presente este indi-

viduo demuestra tener un proceso psicótico activo y crónico, con marcado empobrecimiento afectivo, pobreza en la asociación de ideas y alucinado visualmente y auditivamente con ideas delirantes. Creo que el cuadro que presenta el paciente es una manifestación del cuadro esquizofrénico que ha padecido el paciente desde hace años y que en aquel entonces hubo una remisión de síntomas secundarios que permitía a este paciente poder desempeñarse en su trabajo." El doctor Ernesto Alonso, quien tuvo a Rivera bajo tratamiento en el Hospital de Psiquiatría, declaró que no podía determinar la causa que produjo la condición del obrero, "eso es cosa de la infancia ya al nacer un individuo, y lo puede agravar el ambiente," pudiendo ello responder a una tensión emocional de cualquier género. Añadió que "No es que esté relacionado con el trabajo pero si es un individuo que ha estado del 1947–48 enfermo, indiscutiblemente ha habido algún trauma emocional, alguna cosa de tipo violento en su capacidad de percibir." Y, finalmente, el doctor Abel de Juan, fundándose en los testimonios de los peritos mencionados, opinó que se trataba del curso normal de la demencia y que no veía nada que hubiese precipitado una exacerbación de la condición del reclamante.

Los elementos de prueba para relacionar la condición del recurrente con el trabajo que desempeñaba son escasos, vagos e imprecisos. Apreciados en la forma más favorable establecen que Rivera estuvo recluido en el Hospital de Psiquiatría en el año 1947 por espacio de aproximadamente un año; que luego fue ingresado en 1948 por otro año adicional, en ambas ocasiones con el mismo diagnóstico de reacción esquizofrénica de tipo catatónico. Nuevamente, en febrero de 1963, fue admitido a dicha institución, siendo dado de alta en noviembre del mismo año. El paciente, quien había trabajado en la fundición aproximadamente durante 20 años, informó que "mientras estaba en el taller se sintió inquieto, la cabeza le daba vueltas y notó que la mente le iba a fallar,

salió desesperado del taller y se fue para su casa, *no sabe si hubo accidente.*" Un compañero de labores describió las condiciones de trabajo en la fundición, hace mucho calor y las temperaturas son altas, pero específicamente dijo desconocer que Rivera hubiese sufrido un accidente. Acreditó además que las relaciones del obrero con los demás compañeros de trabajo eran buenas y que no tenía conocimiento de que le hubiese ocurrido incidente alguno o hubiese tenido una discusión o altercado.

▆▆▆ Es innegable que la esquizofrenia sobrevenida al recurrente sería compensable, aun aceptando su origen no atribuible a causas del empleo, si se hubiese demostrado que las condiciones del trabajo en alguna forma precipitaron o propiciaron la recurrencia de la enfermedad mental preexistente. *Feliciano Figueroa* v. *Comisión Industrial*, 84 D.P.R. 196 (1961), contiene una excelente discusión de una situación similar. En general, véanse, *Hayes* v. *Garvey Drilling Co.*, 360 P.2d 889 (Kan. 1961); *Carter* v. *General Motors Corp., Chevrolet G. & A. Div.*, 106 N.W.2d 105 (Mich. 1960); *High Splint Coal Company* v. *Jones*, 338 S.W.2d 208 (Ky. 1960); Schneider, *Workmen's Compensation*, vol. 5, § 1411; Larson, *Workmen's Compensation Law*, vol. 1, § 42.22. Una regla parecida hemos adoptado en relación con las enfermedades del corazón, *Vda. de Fernández* v. *Comisión Industrial*, 85 D.P.R. 298 (1962). Sin embargo, hemos escudriñado la prueba que tuvo ante sí la Comisión Industrial, y en verdad ni con el espíritu de mayor liberalidad, podemos sostener que se demostrara que la condición actual del recurrente estuviera en alguna forma ligada al empleo. El mero hecho de que la labor le expusiera a altas temperaturas no es suficiente ni se relacionó como una posible causa. Por eso, *Gallart, Admor.* v. *Comisión Industrial*, 85 D.P.R. 616 (1962), es distinguible.

*Se confirmará la resolución dictada por la Comisión Industrial en 26 de octubre de 1964.*