RAMÓN A. RIVERA RIVERA, ETC., recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO, ETC., demandada; GUILLERMINA SOTO OTERO, interventora.

*Número:* O-71-150 *Resuelto:* 15 de noviembre de 1974

*Moisés García Viera, Leoncio Carrasquillo Suárez, Miguel A. Guzmán Soto, Jorge Márquez Gómez, Wilfredo Márquez Boneta* y *Santiago Amadiz Jiménez Sabat,* abogados del recurrente; *Jesús Hernández Sánchez,* abogado de la interventora.

EL JUEZ ASOCIADO SEÑOR RIGAU emitió la opinión del Tribunal.

Se trata de un recurso de revisión proveniente de la Comisión Industrial, Art. 11 de la Ley Núm. 45 de 18 de abril de 1935, conocida como Ley de Compensaciones por Accidentes del Trabajo, según enmendada, 11 L.P.R.A. sec. 12. Los hechos no están en controversia. El Administrador del Fondo del Seguro del Estado aceptó la condición mental de la recurrente. Su posición es que dicha condición no constituye un accidente del trabajo y que, por lo tanto, no es compensable. Denegó compensación. La Comisión Industrial lo revocó y ordenó compensar.

Ante nos el Administrador señala dos errores. El primero es en el sentido de que erró la Comisión al resolver que la obrera sufrió un accidente de los cubiertos por la Ley de Com-

pensaciones por Accidentes del Trabajo. En el segundo señalamiento sostiene que erró la Comisión al resolver, sin tener jurisdicción para así hacerlo, que la obrera estaba total y permanentemente incapacitada, ya que el Fondo no había hecho en primera instancia determinación alguna sobre el particular. Discutiremos los señalamientos en ese mismo orden.

La interventora, Guillermina Soto, trabajó aproximadamente cinco años con una firma llamada Playtex Caribe, Inc. Operaba una máquina de coser y su tarea consistía en coser determinada parte de los sostenes que producía dicha firma. Debía completar 25 paquetes diarios, por lo cual recibía paga fija, pero usualmente ella hacía 32, y recibía paga adicional por el exceso sobre 25.[1] La interventora mantenía buenas relaciones con sus compañeras de trabajo y con sus superiores. Tuvo un alumbramiento en el cual perdió la criatura. Al regresar al trabajo se le notaba muy nerviosa y a pesar de que hacía su producción usual a veces lloraba y hubo que darle vacaciones por enfermedad. Regresó a su trabajo pero seguía aparentemente enferma y tuvo que dejar de trabajar. Anteriormente ella se había quejado de que el exceso de trabajo que realizaba le causaba dolores de cabeza y nerviosismo.

Estuvo hospitalizada en la Clínica Juliá, de Hato Rey, Puerto Rico, donde el Dr. Santiago diagnosticó su enfermedad como "síndrome cerebral crónico, asociado con desórdenes, convulsión y psicosis, relacionada con el trabajo." El Fondo del Seguro del Estado la dio de alta bajo la firma de los Dres. Villalón y Font, los cuales determinaron incapacidad permanente.

En la vista celebrada por la Comisión Industrial prestaron testimonio, entre otros, varios facultativos. El Dr. Fernández Marina declaró que la tensión a que estaba sometida la obrera en el curso de su trabajo para producir determinada cantidad

---

[1] Del expediente sólo surge esa descripción de la cantidad de trabajo que ella hacía, por lo cual no sabemos cuántos sostenes componían cada "paquete".

de material en determinado tiempo sobrepasó su resistencia y produjo la psicosis. El Dr. Charles Payne abundó en lo mismo y explicó que teniendo dicha obrera un nivel bajo de resistencia la tensión en el trabajo sumado a la pena por la muerte de su hijo pudo haber producido la psicosis. De todas maneras, el Administrador no cuestionó la enfermedad de la obrera y su posición fue la antes dicha.

El Art. 2 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 2, dispone que dicha ley cubre (1) accidentes que provengan de cualquier acto o función inherente al trabajo o empleo que ocurran en el curso de éste y como consecuencia del mismo y (2) muertes o *enfermedades derivadas de la ocupación,* según se especifican en la Sec. 3 de la ley.

El Art. 3 de la ley, 11 L.P.R.A. sec. 3, según enmendado, establece los derechos de asistencia médica, hospitalización y compensación a que tienen derecho los obreros que sufran lesiones o enfermedades, así como la compensación por muerte. En lo relativo a incapacidades dicho artículo provee para compensación por (1) incapacidades transitorias, (2) incapacidades parciales permanentes, (3) incapacidades totales permanentes y (4) incapacidades no relacionadas con el trabajo pero que hubiesen sido agravadas por accidentes del trabajo. Entre las incapacidades totales, dicho Art. 3 incluye "perturbaciones mentales totales que sean incurables."

El Fondo sostiene que en este caso no hubo un accidente compensable y que la perturbación mental no es consecuencia de un riesgo peculiar del trabajo .

■ A tenor con lo expresado en los casos de *Vda. de Fernández* v. *Comisión Industrial,* 85 D.P.R. 298, 301 (1962) y *Rivera Cruz* v. *Comisión Industrial,* 92 D.P.R. 229, 231 (1965), la interventora en el caso de autos tendría derecho a compensación por su incapacidad mental si la prueba estableció —como creemos que lo hizo—que su enfermedad fue causada o agravada por su trabajo, aun cuando dicha enfermedad no se

considere ocupacional o no esté relacionada con un accidente. En *Vda. de Fernández*, supra, dijimos a la pág. 301:

"[L]a misión de los organismos administrativos, en primera instancia, y de este Tribunal, no consiste en determinar el origen etiológico de la enfermedad sino que debe limitarse a determinar la existencia de una relación de causalidad entre la labor realizada y el resultado final—incapacidad o muerte—, o sea, si la labor contribuyó al resultado, mediante la agravación, aceleración o precipitación de la enfermedad."

Y en *Rivera Cruz*, supra, a la pág. 231 expresamos:

"Es innegable que la esquizofrenia sobrevenida al recurrente sería compensable, aun aceptando su origen no atribuible a causas del empleo, si se hubiese demostrado que las condiciones del trabajo en alguna forma precipitaron o propiciaron la recurrencia de la enfermedad mental preexistente."

En *Alonso García* v. *Comisión Industrial*, 102 D.P.R. 689 (1974), luego de una amplia discusión de nuestra jurisprudencia sobre esta materia, la cual no ha sido siempre consistente, (²) nos expresamos como sigue:

"Resolvemos que la insistencia clásica en sentar finos distingos entre lo que constituye un 'accidente' y lo que entraña una 'enfermedad' debe ceder ante el enfoque que desde hace tiempo se ha venido dictando. Lo verdaderamente importante es deter-

---

(²) Por ejemplo, en *Vda. de Fernández*, 85 D.P.R., a la pág. 301, expresamos que la misión de los organismos administrativos y de este Tribunal "debe limitarse a determinar la existencia de una relación de causalidad entre la labor realizada y el resultado final—incapacidad o muerte—o sea, si la labor contribuyó al resultado mediante la agravación, aceleración o precipitación de la enfermedad." Luego de esa aseveración, en *Hernández Nieves* v. *Comisión Industrial*, 90 D.P.R. 340 (1964), a la pág. 356, dijimos "Conforme a lo expuesto es preciso que el reclamante establezca que su condición fue contraída debido a un riesgo peculiar de la ocupación o empleo." Posteriormente, en *Rivera Cruz* v. *Comisión Industrial*, 92 D.P.R., a la pág. 231, volvimos a ampliar el concepto que habíamos restringido y dijimos: "Es innegable que la esquizofrenia sobrevenida al recurrente sería compensable, aun aceptando su origen no atribuible a causas del empleo, si se hubiese demostrado que las condiciones del trabajo en alguna forma precipitaron o propiciaron la recurrencia de la enfermedad mental preexistente."

minar si ha ocurrido una lesión inherente al trabajo o empleo concernido *o que ocurra o se agrave en el curso de éste.*"

Creyendo como creemos que tuvo razón la Comisión Industrial al encontrar nexo causal entre el trabajo de la interventora y su enfermedad o la agravación de ésta, resolvemos confirmar dicha determinación de la Comisión.

En cuanto al segundo señalamiento de error que hace el Fondo—que la Comisión resolvió sin jurisdicción que la obrera estaba incapacitada porque el Fondo no había hecho determinación sobre el particular—podemos expresar lo siguiente.

Como señalamos en *Montaner* v. *Comisión Industrial,* 51 D.P.R. 460, 464 (1937), nada hallamos en el estatuto que revele cuál es la naturaleza de la vista que se celebra ante la Comisión, esto es, si se trata de una apelación a modo de revisión, de un juicio *de novo* o de uno de naturaleza mixta. Allí dijimos que las notas taquigráficas tomadas ante el Administrador del Fondo pueden ser utilizadas ante la Comisión; que cualquiera de las partes puede presentar evidencia adicional, a discreción de la Comisión; y que pueden llamarse testigos para ser examinados. Allí, pues, se le impartió una naturaleza mixta a la vista ante la Comisión—se podían utilizar las notas taquigráficas, pero también se podía presentar evidencia adicional y se podía examinar a testigos.

En *Montaner* v. *Comisión Industrial,* 52 D.P.R. 924–928 (1938), expresamos que la Comisión tiene facultades cuasi judiciales y cuasi tutelares y que es ella y no los tribunales la encargada de dirimir en primera instancia las contiendas que pudiesen surgir entre el Administrador del Fondo y los obreros o sus beneficiarios. En *Montaner* v. *Comisión Industrial,* 53 D.P.R. 183 (1938), la cuestión envuelta era si la Comisión tiene o no facultad para rebajar un tipo de seguro fijado por el Administrador, mientras se decide un recurso interpuesto ante ella en solicitud de dicha rebaja. Allí, a la pág. 185, se dijo que no hay la más leve duda de que la Comisión, al decidir el recurso, tiene facultad para rebajar la

prima fijada por el Administrador. Comentando sobre la relación entre el Administrador y la Comisión, dijimos allí, a la pág. 186:

"La comisión supervisa los actos del Administrador. Y si la comisión se convence en principio de lo justo de una reclamación que afecta a miles de personas en la Isla, no debe verse constreñida a dilatar la adopción de alguna medida reparadora, siempre que lo haga garantizando todos los intereses envueltos."

En *Rodríguez* v. *Comisión Industrial,* 58 D.P.R. 111 (1941), la viuda de un obrero y sus dos hijos legítimos solicitaron de este Tribunal que anulase una resolución de la Comisión mediante la cual se declararon también beneficiarios a dos hijos ilegítimos del obrero. Se señaló como uno de los errores que la resolución era contraria a la ley porque la compensación no había sido distribuida conforme lo prescribía la ley. Sobre la facultad de la Comisión para hacer la distribución de los fondos allí expresamos, a la pág. 115:

"En cuanto al tercer error o sea que la Comisión no estaba autorizada para hacer la distribución, autoridad que sólo tiene el administrador de acuerdo con el artículo 3, inciso 5 de la Ley de Compensaciones por Accidentes del Trabajo, bastará decir que en efecto esa facultad corresponde al administrador, pero que ello no implica que apelado un caso para ante la Comisión, al resolverlo ésta tomando en cuenta los hechos y la ley, no pueda dictar la resolución que proceda y que debió haber dictado el administrador y no lo hizo."

Sin embargo, en *González* v. *Comisión Industrial,* 60 D.P.R. 622 (1942), dijimos que el plan general de la ley es que el Administrador resuelva las cuestiones de primera instancia. En *Cordero* v. *Comisión Industrial,* 61 D.P.R. 466 (1943), el Administrador ordenó que se privara al obrero de su derecho a recibir compensación por razón de que estaba interviniendo con su tratamiento médico con el propósito de prolongarlo. El obrero apeló para ante la Comisión y ésta revocó al Administrador. Allí repetimos lo antes dicho en el

sentido de que el plan general de la ley es que el Administrador resuelva las cuestiones en primera instancia. Resolvimos que habiendo el Administrador hecho su decisión correspondía a la Comisión decidir en sus méritos la apelación del obrero contra dicha decisión.

A la luz del plan general de la ley, la cuestión del grado de incapacidad debe ser resuelta en primera instancia por el Administrador. En el caso de autos el Administrador no pasó sobre esa cuestión seguramente porque entendía que la incapacidad no era compensable por no estar cubierta por el estatuto. Este caso lleva más de cuatro años en los organismos administrativos y judiciales. Conceder ahora una segunda oportunidad al Administrador para dilucidar el grado de incapacidad de la obrera conllevaría una segunda decisión suya con la posibilidad de una segunda apelación para ante la Comisión y una segunda revisión judicial por nosotros.

Este caso demuestra la necesidad de que llenemos la laguna del Art. 10 de la Ley, 11 L.P.R.A. sec. 11, declarando explícitamente que la vista ante la Comisión Industrial es de naturaleza mixta. (³) Pueden utilizarse notas taquigráficas y la evidencia presentada y admitida en la vista ante el Administrador y también puede presentarse evidencia adicional y pueden examinarse peritos médicos y testigos.

En esta forma las partes estarán en mejor posición para plantear ante nos lo que corresponda cuando una de ellas acude en revisión a este Tribunal. Eso también nos ayudará a nosotros a hacer una justicia más certera en estos casos. En la vista ante la Comisión las partes deberán y podrán hacer los planteamientos que el caso requiera; podrán presentar la

---

(³) En nuestro sistema de Derecho Civil, de entronque europeo-continental, es permisible y a veces necesario suplir jurisprudencialmente las lagunas de la ley, sin que por esto se deba caer en la libre legislación casuística, como ocurre en las jurisdicciones de derecho consuetudinario. *United Hotels of P.R.* v. *Willig,* 89 D.P.R. 188, 196 (1963); *El Mundo, Inc.* v. *Tribunal Superior,* 92 D.P.R. 791, 804 (1965); *Borges* v. *Registrador,* 91 D.P.R. 112, 132 *in fine* y 133 (1964).

evidencia correspondiente y la Comisión podrá y deberá adjudicar todas las cuestiones que plantee el caso y que sea propio o necesario adjudicar. Así las partes no estarán sujetas a que su caso se vea fraccionadamente, por etapas, con los consecuentes gastos y pérdida de tiempo. En estos casos esa consideración tiene especial validez ya que el obrero lesionado o enfermo frecuentemente pierde su fuente de sustento. En este sentido, nótese que la propia ley establece que si el Fondo demora por más de un mes, sin causa justificada, la decisión de un caso, la Comisión puede ordenarle que lo decida o puede ordenar que se le remita el expediente y asumir jurisdicción sobre el caso y decidirlo. Art. 7 de la ley, 11 L.P.R.A. sec. 9.

■ En el caso de autos el grado de incapacidad de la interventora fue establecido no solo por su perito médico, sino que también fue reconocido por los propios médicos del Fondo. Ante las circunstancias relatadas entendemos que no se cometió tampoco el segundo error señalado.

En vista de lo anterior, *se confirmará la Resolución de la Comisión Industrial dictada en este caso.*

El Juez Asociado, Señor Martín, concurre en el resultado.