JUAN AGOSTO SERRANO, lesionado y recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador y recurrente.

*Número:* CI-89-439 *Resuelto:* 8 de marzo de 1993

*Aleida Marxuach*, abogada del recurrente; *Enrique Irizarry Ortiz*, abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR FUSTER BERLINGERI emitió la opinión del Tribunal.

Tenemos ante nos una controversia que no habíamos resuelto antes. Nos toca decidir si la Comisión Industrial (Comisión) tiene autoridad para ordenarle al Fondo del Seguro del Estado (Fondo) que evalúe una reclamación, aun cuando la misma no satisface los requisitos mínimos que el propio Fondo ha establecido mediante reglamento para determinar cúales reclamaciones son susceptibles de consideración.

I

El 22 de agosto de 1980 Juan Agosto Serrano sufrió una caída al bajar de la máquina que estaba operando a una altura de seis (6) pies mientras trabajaba para Rexco Industries, Inc. El Fondo le diagnosticó una radiculopatía lumbar y le reconoció al obrero lesionado un quince por ciento (15%) de incapacidad de sus funciones fisiológicas como resultado de dicho accidente. La incapacidad antes señalada fue aumentada a veinte por ciento (20%) por la Comisión el 11 de marzo de 1983. El caso se devolvió al Fondo para que éste le practicara al lesionado otro examen diagnóstico, conocido como *CT SCAN*. Luego de ello, el Administrador del Fondo (Administrador) emitió una decisión en la que aumentó la incapacidad del obrero a un treinta

por ciento (30%) de sus funciones fisiológicas. El 13 de noviembre de 1984 la Comisión volvió a aumentar dicha incapacidad, esta vez a un treinta y cinco por ciento (35%).

Posteriormente, el obrero alegó ante el Administrador una condición emocional relacionada con el accidente de 22 de agosto de 1980. El 27 de junio de 1986, el Administrador emitió una decisión en la que reconoció que la condición emocional guardaba relación con el accidente del trabajo. Por esta razón, le reconoció al lesionado una incapacidad de quince por ciento (15%) de las funciones fisiológicas generales por condición emocional, para un total de cincuenta por ciento (50%) de incapacidad de las funciones fisiológicas.

La parte obrera no estuvo conforme con la decisión del Administrador y apeló el mismo 27 de junio de 1986. La Comisión celebró una vista y el obrero fue referido a un especialista, el Dr. Abelardo Martínez, quien examinó al obrero lesionado y redactó un informe en el que expresó que no recomendaba mayor tratamiento psiquiátrico a través del asegurador. La Comisión acogió la recomendación del doctor Martínez y resolvió mediante Resolución de 24 de julio de 1987 confirmar la decisión del Administrador. La representación legal del obrero solicitó entonces una vista pública en apelación. Esta vista se celebró el 8 de abril de 1988. Surge del informe del oficial examinador que al inicio de los procedimientos el abogado del obrero solicitó que el caso fuera referido al Comité de Factores Socio-Económicos (Comité). La representante legal del Fondo objetó dicha solicitud, invocando un reglamento de ese organismo que establece un porcentaje mínimo de sesenta por ciento (60%) de incapacidad como condición para que dicho comité pueda asumir jurisdicción para evaluar determinados casos. El oficial examinador no dispuso nada sobre el particular en ese momento y procedió a oir la prueba. El doctor Martínez reiteró en su declaración el diagnóstico psiquiátrico negativo expresado en su informe

escrito. En cuanto al aspecto de incapacidad, señaló que no sabía qué grado de incapacidad podía tener el obrero ya que no orientó su evaluación hacia tal asunto. La doctora Mirabal, perito médico del Fondo, declaró que el peticionario había sido reevaluado el 3 de febrero de 1986, y que le dieron cinco (5) citas adicionales, al cabo de las cuales fue dado de alta con el mismo diagnóstico. Luego de este testimonio el caso quedó sometido por las partes.

El 13 de julio de 1988 la Comisión emitió una resolución en la que devolvía el caso al Fondo para que el Comité lo evaluase. El Fondo solicitó reconsideración y le fue denegada.

Inconforme, el Fondo acude ante nos. Cuestiona la validez de la resolución de la Comisión en la que se devolvía el caso a la jurisdicción del Fondo para evaluación por su Comité, aduciendo que el caso no cumple con una de las normas que determinan cuándo el Comité puede entender en algún asunto, fijada precisamente en el reglamento del Fondo que crea dicho comité.

## II

Como es sabido, el Comité es la estructura administrativa creada por el propio Fondo *al amparo de decisiones nuestras* para ayudar a realizar la fundamentalísima función de determinar si un obrero lesionado tiene la habilidad necesaria para realizar un empleo remunerativo. Al interpretar la Ley de Compensaciones por Accidentes del Trabajo reiteradamente hemos señalado que la determinación de si un obrero tiene o no incapacidad total no descansa únicamente en el análisis puramente médico del impedimento físico del trabajador, sino que requiere, además, la evaluación de otros factores socioeconómicos tales como su edad, sexo, profesión, escolaridad, las oportunidades de empleo en el área donde reside el obrero y otros. El Comité aludido es el mecanismo desarrollado por el Fondo para

evaluar tales factores y así implementar la doctrina que hemos establecido en *Rodríguez Ortiz v. Comisión Industrial*, 90 D.P.R. 764 (1964); *Arzola Maldonado v. Comisión Industrial*, 92 D.P.R. 549 (1965), y *Herrera Ramos v. Comisión Industrial*, 108 D.P.R. 316 (1979). Se trata de un cuerpo permanente que asesora al Administrador en la evaluación del potencial de trabajo remunerativo de un lesionado.

■ El Comité fue creado el 1ro de junio de 1987 mediante un reglamento dictado y debidamente promulgado por el Administrador. En el preámbulo del reglamento aludido se reconoce expresamente que el mismo "tiene como objetivo, establecer las bases que permitan la *uniformidad en la tramitación, estudio y determinación* de los casos en que se alega incapacidad total permanente por factores socioeconómicos" (énfasis suplido), todo ello "de conformidad con [las opiniones]" en los casos *Rodríguez Ortiz v. Comisión Industrial*, supra, *Arzola Maldonado v. Comisión Industrial*, supra, y *Herrera Ramos v. Comisión Industrial*, supra. Reglamento sobre Factores Socio-Económicos Núm. 3470, Fondo del Seguro del Estado, 1ro de junio de 1987, Memorial Explicativo. Igualmente, en la primera sección de dicho reglamento, que identifica su base legal, se reconoce expresamente también que el mismo se promulga "à tenor con ... la doctrina establecida por el Honorable Tribunal Supremo de Puerto Rico ...". Y la Sec. 5.6 del Reglamento, *supra*, dispone que todas las decisiones del Comité serán firmadas a nombre y en representación del Administrador.

■ Las disposiciones del Reglamento sobre Factores Socio-Económicos antes mencionadas, sobre todo vistas a la luz de su historial y de las razones que dieron lugar a que se adoptara, reflejan claramente la naturaleza *instrumental* del Comité y del reglamento que lo crea. No tenemos ante nos una reglamentación típicamente de *natura-*

*leza legislativa,* como son aquellas que una agencia administrativa formula al amparo de una delegación expresa de la Asamblea Legislativa, para darle contenido substantivo detallado a alguna norma estatutaria general o de algún otro modo complementar normativamente el esquema legislativo. Sabido es que tales reglamentaciones de naturaleza legislativa tienen fuerza de ley, y si son constitucionalmente válidas, vinculan inexorablemente.[1] Pero en ocasiones, como es el caso del reglamento ante nos, las agencias administrativas aprueban directrices (*guidelines*) u otras reglamentaciones menos formales (*interpretative rules*) que se adoptan para darle uniformidad a sus propios procesos, para pautar la discreción administrativa o para otros fines internos y que, aunque son de aplicación general y vinculan administrativamente, pueden ser modificadas judicialmente.[2] La distinción entre unas y otras es un dato bien establecido de derecho administrativo, como bien lo señala el profesor Davis en su autoritativo y muy conocido *Administrative Law Treatise.*[3] El reglamento en cuestión es de este segundo tipo, particularmente porque se hizo específicamente para darle uniformidad a determinaciones administrativas que implementan decisiones judiciales.[4]

---

[1] Art. 6 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 8. Veáse, también, 2 *Davis, Administrative Law Treatise* Secs. 7.8–7.11 (2da ed. 1979).

[2] *Davis,* supra.

[3] Las Secs. 2.1–2.21 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. secs. 2121–2141, establecen el procedimiento a seguir para la adopción de reglamentos legislativos. En particular, las Secs. 2.1, 2.2 y 2.3 requieren que la agencia avise al público de la intención de adoptar un reglamento y le provea oportunidad para someter comentarios por escrito. Esto contrasta significativamente con el caso de las reglamentaciones menos formales (*interpretative rules*) y las directrices (*guidelines*) en cuyo caso no hay que cumplir con los requisitos anteriormente señalados, ya que la ley no lo requiere.

[4] El hecho de haber sido promulgado conforme a la Ley Sobre Reglamentos de 1958, derogada en 1988, no es determinativo de si tiene un carácter u otro. Dicha ley se aprobó meramente para darle la publicidad más amplia posible a los reglamentos gubernamentales y nada impedía que un reglamento como el de marras se promulgase con arreglo a la misma. La cuestión sobre cuál es el carácter de un reglamento

## III

El planteamiento que nos hace el Fondo exige que reexaminemos brevemente la naturaleza y el alcance de las funciones de la Comisión Industrial con el propósito de determinar si ésta actuó correctamente al devolver el caso de autos al Fondo para evaluación por el Comité, aunque dicho caso no cumpliese con una de las disposiciones reglamentarias que regulan la injerencia de dicho comité.

 La Ley de Compensaciones por Accidentes del Trabajo[5] se aprobó con el propósito de poner en vigor la política pública de prestación de servicios médicos y compensación a obreros y empleados por lesiones, incapacidad o muerte relacionada con el trabajo. Esta ley creó dos (2) organismos para implementar el mandato de ley: El Fondo y la Comisión. En síntesis, el Fondo es el foro primario donde se dilucida si un obrero es elegible o no a los beneficios que establece la ley. Se encarga de la investigación de las reclamaciones por accidentes del trabajo, de la rehabilitación a través de servicios médicos y del pago de compensación por incapacidad parcial o total. 11 L.P.R.A. sec. 8.[6]

---

surge en la doctrina para determinar el alcance de la revisión judicial y se rige por criterios fijados por dicha doctrina.

[5] Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 8), según enmendada por la Ley Núm. 83 de 29 de octubre de 1992.

[6] Estando pendiente ante nuestra consideración la solución de este caso, se enmendó la Ley de Compensaciones por Accidentes del Trabajo. A tenor con la Ley Núm. 83 de 29 de octubre de 1992 (11 L.P.R.A. sec. 8), la estructura del Fondo fue modificada creándose la Corporación del Fondo del Seguro del Estado y un Consejo Médico Industrial.

La Ley Núm. 83, *supra*, no produjo cambios significativos en la estructura y las funciones de la Comisión Industrial que alteren el resultado a que llegamos. Es importante señalar que la nueva ley en su Art. 5B dispone, en lo pertinente:

*"Todo procedimiento, acción o reclamación pendiente ante el Fondo del Seguro del Estado, la Comisión Industrial o ante cualquier agencia o tribunal que, a la fecha de vigencia de esta Ley, esté tramitándose bajo las disposiciones de la Ley Núm. 45 de 18 de abril de 1935, según enmendada, o bajo cualquier otra Ley vigente, se continuará tramitando hasta que recaiga una determinación final de acuerdo con dichas leyes.*

■ La Comisión, por otro lado, es un organismo de carácter fundamentalmente *adjudicativo* y revisor. *Rivera v. F.S.E.*, 112 D.P.R. 670 (1982); *Rivera Rivera v. Comisión Industrial*, 103 D.P.R. 51 (1974); *Cordero, Admor. v. Comisión Industrial*, 61 D.P.R. 466 (1943). Conforme al texto de la ley, la Comisión tiene funciones de naturaleza *cuasi judicial* y cuasi tutelar para la investigación y la resolución de *todos* los casos de accidentes en que el Administrador y el obrero o empleado lesionado no lleguen a un acuerdo respecto a la compensación. 11 L.P.R.A. sec. 8, según enmendada por el Art. 2 de la Ley Núm. 83 de 24 de octubre de 1992. Por otro lado, recientemente en *Baerga Rodríguez v. F.S.E.*, 132 D.P.R. 524 (1993), señalamos que como regla general la Comisión Industrial actúa como tribunal apelativo del Fondo a nivel administrativo.

■ A tenor con esta facultad cuasi judicial, hemos reconocido en *Rivera Rivera v. Comisión Industrial*, supra, pág. 56, y en *Montaner, Admor. v. Comisión Industrial*, 51 D.P.R. 460 (1937), que la Comisión es la encargada de dirimir en primera instancia las contiendas entre el Administrador y los obreros o sus beneficiarios, *y que es el árbitro final de los derechos provenientes de accidentes del trabajo a nivel administrativo.*

La revisión de la determinación de si un obrero o empleado es eligible o no a los beneficios de una incapacidad total dentro del contexto del Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo(⁷) *es claramente un*

---

*"Todos los reglamentos, procedimientos, órdenes administrativas y otras determinaciones adoptadas por el Fondo del Seguro del Estado continuarán en todo su vigor hasta que sean enmendados o derogados por la Junta de Directores de la Corporación."* (Énfasis suplido.) 11 L.P.R.A. sec. 1 n.

La discusión de este caso se hace conforme a las disposiciones de la Ley Núm. 45, *supra*, vigente al momento de la tramitación del caso, no sólo porque la propia Ley Núm. 83, *supra*, así lo dispone, sino también porque dicha ley aprobada el 29 de octubre de 1992 entrará en vigor a los ciento ochenta (180) días de su aprobación.

(⁷) 11 L.P.R.A. sec. 3.

*asunto que le compete a la Comisión como árbitro final de los derechos de los obreros a nivel administrativo.* El hecho de que la elegibilidad a los beneficios de incapacidad total por el Fondo dependa inicialmente de la evaluación y recomendación que haga el Comité del Fondo no afecta ni la autoridad administrativa final de la Comisión ni sus facultades cuasi judiciales. Como ya hemos señalado, dicho Comité es un cuerpo auxiliar que ejerce una importante función de asesoramiento, pero sus labores forman parte de todo un entramado administrativo en el cual la palabra final la tiene la Comisión. La existencia y reglamentación del Comité, pues, no pueden ser obstáculos que limiten la autoridad de la Comisión, sobre todo cuando se trata de un reglamento que no es de naturaleza legislativa.

## IV

■ La realidad jurídica que hemos reseñado en los párrafos anteriores sobre la incuestionable autoridad de la Comisión para revisar las decisiones pertinentes del Fondo es fundamento suficiente para sostener la resolución de la Comisión que se ha impugnado ante nos. Pero hay otro fundamento importante que también debemos destacar. La objeción del Fondo a que el Comité evalúe el caso en cuestión se fundamenta en que el Reglamento sobre Factores Socio-Económicos establece como criterio de elegibilidad para la evaluación el requisito de que el obrero lesionado tenga un sesenta por ciento (60%) de incapacidad en las funciones fisiológicas.[8] Hemos examinado cuidadosamente nuestras decisiones en *Rodríguez Ortiz v. Comisión Industrial,* supra, *Arzola Maldonado v. Comisión Industrial,* supra, y *Herrera Ramos v. Comisión Industrial,* supra, que establecen la doctrina que el Comité implementa,

---

[8] Reglamento sobre Factores Socio-Económicos Núm. 3470, Fondo del Seguro del Estado, 1ro de junio de 1987.

y no encontramos base en ellos para limitar el que se determine la incapacidad total por factores socioeconómicos sólo a obreros o empleados que posean un sesenta por ciento (60%) de incapacidad en las funciones fisiológicas. Los precedentes antes señalados fijan los parámetros a tomar en cuenta para determinar si procede una incapacidad total por factores socioeconómicos y no establecen un mínimo de impedimento físico que sea necesario para ser elegible a los beneficios de incapacidad total permanente. El aludido criterio de sesenta por ciento (60%) de incapacidad fijado por el Fondo no debe ser utilizado como norma inflexible que excluya en casos meritorios la evaluación de alguna reclamación. La propia Ley de Compensaciones por Accidentes del Trabajo no lo exige. Tampoco lo exigen nuestros pronunciamientos previos sobre el particular. Por el contrario, aplicar dicho criterio inflexiblemente conlleva derrotar la doctriná que hemos establecido sobre el particular en aquellos casos que son meritorios, pero en los cuales la incapacidad física determinada es menor del sesenta por ciento (60%). Aunque reconocemos que a mayor impedimento físico mayor es la probabilidad de ser elegible a una incapacidad total por factores socioeconómicos, no podemos descartar de antemano la posibilidad de que un impedimento físico menor, unido a factores socioeconómicos de particular consecuencia, pueda dar lugar a una determinación de incapacidad total de acuerdo con la ley, sobre todo en vista de las peculiaridades que pueden existir en cada caso respecto al temperamento y a la resistencia física y al contorno social de las personas afectadas. Evidentemente, ese fue el mismo juicio que hizo la Comisión al ordenar que el caso ante nos ahora volviese para evaluación al Comité. Un examen de los autos muestra información que justifica la decisión de la Comisión de que el caso fuese evaluado por el Comité. El obrero lesionado sufría un impedimento físico permanente que imposibilita que se desempeñe como operador de equipo pesado; posee una es-

colaridad baja de sólo quinto grado y actualmente tiene setenta (70) años de edad. Además, surge de los expedientes del Fondo que no existe médicamente tratamiento alguno para reestablecer al obrero lesionado a una condición física normal. En vista de estas circunstancias, no puede negarse que su caso ameritaba una evaluación para decidir si procedía una determinación *legal* de incapacidad total, determinación que le compete inicialmente al Comité.

■ Cuando la Comisión ordenó la devolución del caso al Comité, pues, estaba descargando su responsabilidad razonablemente. Para ello tenía y tiene la clara autoridad que le concede la ley. Una disposición de un reglamento interno del Fondo respecto al Comité no puede constituir una barrera que le impida a la Comisión desempeñar su función esencial. La superior jerarquía administrativa de la Comisión no puede quedar restringida por una norma interna de un organismo que está legalmente sujeto a su facultad revisora, sobre todo cuando esa norma interna, aplicada inflexiblemente en determinados casos meritorios, derrotaría incluso la esencial política pública que interpretando la ley hemos señalado en nuestros anteriores pronunciamientos.

■ Para llegar a esta conclusión también hemos tenido en cuenta que la ley que dilucidamos aquí, por ser de carácter remedial y tener un propósito eminentemente social y reparador, debe interpretarse liberalmente a favor del trabajador. 11 L.P.R.A. sec. 2; *Camacho Rodríguez v. F.S.E.*, 121 D.P.R. 877 (1988); *Villanueva Pérez v. Comisión Industrial*, 109 D.P.R. 790 (1980); *Alonso García v. Comisión Industrial*, 102 D.P.R. 733 (1974). Hay que tener presente que la compensación que se paga al obrero o a sus beneficiarios no es una limosna. Es un derecho que la ley reconoce al trabajador cuando sufre lesiones, se inutiliza o pierde la vida por accidentes del trabajo. *Camacho Rodríguez v. F.S.E.*, supra.

█ La interpretación que hacemos hoy no deja sin efecto el reglamento del Comité. No es necesario declararlo nulo. Reiteradamente hemos reconocido que las decisiones y los criterios de los organismos administrativos especializados merecen gran consideración y respeto de nuestra parte, en vista de la vasta experiencia y conocimiento (*expertise*) de dichos organismos. Por ello no debemos intervenir en sus quehaceres más allá de lo que sea realmente necesario. *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183 (1984); *Murphy Bernabe v. Tribunal Superior*, 103 D.P.R. 692 (1975); *Rodríguez v. Comisión Industrial*, 99 D.P.R. 368 (1970); *Monllor & Boscio v. Comisión Industrial*, 89 D.P.R. 397 (1963). Respecto al reglamento ante nos, a su amparo el Fondo puede seguir evaluando *motu propio* los casos de obreros lesionados que sufran un sesenta por ciento (60%) o más de incapacidad. Nuestra interpretación sólo flexibiliza la rigurosidad del estándar adoptado en el reglamento del Fondo para dar lugar a que el Comité pueda evaluar aquellos casos que la Comisión le remita luego que el obrero establezca *prima facie* un caso que amerita ser evaluado por dicho Comité.

Por los fundamentos antes expuestos, *se confirma la resolución de la Comisión Industrial de 11 de abril de 1989.*

El Juez Asociado Señor Hernández Denton concurrió con una opinión escrita. El Juez Asociado Señor Negrón García se inhibió.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Hernández Denton.

Concurrimos con la sentencia del Tribunal por entender que la disposición reglamentaria del Fondo del Seguro del

Estado que limita la elegibilidad de los beneficiarios de incapacidad total permanente es *ultra vires*.

La opinión mayoritaria reconoce expresamente que ni la Ley de Compensaciones por Accidentes del Trabajo ni nuestra decisión en *Rodríguez Ortiz v. Comisión Industrial*, 90 D.P.R. 764 (1964), en *Arzola Maldonado v. Comisión Industrial*, 92 D.P.R. 549 (1965) y en *Herrera Ramos v. Comisión Industrial*, 108 D.P.R. 316 (1979), establecen los requisitos de elegibilidad contenidos en la Sec. 3.2 del Reglamento sobre Factores Socio-Económicos Núm. 3470, Fondo del Seguro del Estado, de 1ro de junio de 1987.

Este reglamento fue promulgado al amparo de la Ley sobre Reglamentos de 1958 y de los poderes conferidos al Administrador del Fondo para aprobar "reglas razonables y apropiadas ... [que] tendrán fuerza de ley". 11 L.P.R.A. sec. 8. Según los propios términos de la Ley sobre Reglamentos de 1958, las reglas que tenían que ser presentadas en el Departamento de Estado eran las de aplicación general a toda la ciudadanía, y eran de naturaleza legislativa y no de carácter interno o interpretativo.

Una lectura del Reglamento sobre Factores Socio-Económicos revela claramente que no se refiere "al orden o administración interna de una agencia", o se dirige "a una persona específica o a un grupo de personas". Por ende, es un reglamento de carácter legislativo, y precisamente por eso fue promulgado al amparo de la Ley sobre Reglamentos de 1958.

Su validez depende esencialmente de que cumpla con el mandato legislativo. *A.P.I.A.U., Inc. v. S. de Hacienda*, 100 D.P.R. 173, 177 (1971); *Las Monjas Racing Corp. v. Com. Hípica*, 67 D.P.R. 45, 55 (1947). En ausencia de una disposición estatutaria que autorice expresamente al Administrador a imponer un requisito de sesenta por ciento (60%) o más en las funciones fisiológicas de incapacidad parcial permanente para ser acreedores a la consideración del Comité, la Sec. 3.2 es ilegal.

En estas circunstancias, la Comisión Industrial actuó

correctamente al revocar la resolución recurrida y procede que confirmemos este dictamen sin tener que recurrir a distinciones reglamentarias que no son aplicables al caso de autos.