José M. Alonso García, en su carácter de Administrador del Fondo del Seguro del Estado, recurrente, *v.* Comisión Industrial de Puerto Rico, etc., demandada.

Número: O-74-142          Resuelto: 30 de octubre de 1974

*Jorge Márquez Gómez, Miguel A. Guzmán Soto* y *José Francisco Reyes del Valle,* abogados del recurrente.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Manuel Díaz Colón trabajaba como mensajero para el Professional Hospital, Inc. Sufrió un accidente del trabajo. Se cayó resultando con una contusión en la nariz y en el pómulo izquierdo. Pendiente de que se le fijara la incapacidad correspondiente, falleció. La muerte no estuvo relacionada con el accidente. Se le fijó con posterioridad a su muerte por las "fracturas de los huesos nasales con desviación del septum hacia el lado derecho una incapacidad de un 10% de pérdida de las funciones fisiológicas generales. . . ." La única dependiente resultó ser su madre de 82 años.

La madre apeló "porque la cantidad fijada sobre incapacidad por el accidente que tuvo en el trabajo es muy baja." Además se alegó que la muerte había sido consecuencia del accidente.

La Comisión Industrial determinó, confirmando al Administrador del Fondo, que el obrero falleció de causa ajena al accidente. Confirmó la determinación de un 10% de pérdida de las funciones fisiológicas pero le concedió 15% por desfiguración del rostro.

El Administrador solicitó la reconsideración por entender que no procedía conceder compensación adicional por desfiguración. Al resolverla, la Comisión expresó "Luego de un detenido estudio de la misma y en vista de que en este caso no se pasó prueba sobre la incapacidad física con que pudo haber quedado el occiso de no haber muerto, este Organismo deja sin efecto su resolución anterior y reabre el caso para determinar si la incapacidad fijada post-morten es una justa y razonable."

En la vista celebrada "para determinar si la incapacidad fijada post-morten es una justa y razonable" el Dr. Calcagno "declaró que el obrero occiso sufrió una fractura de los huesos nasales con desviación del septum hacia el lado derecho; que es el hueso que divide las dos fosas nasales; que no estaba en la posición normal y eso se ve en la nariz normal aunque no haya fractura y en este caso se determinó que había desviación hacia el lado derecho y se le fijó una incapacidad de un 10% de las funciones fisiológicas generales y cree que es justa y razonable.

"El Dr. M. Calcagno a preguntas del Comisionado Ponente expresó que si la persona estuviera viva y le ve la nariz si hubiera sido normal contestó que es muy difícil y hay veces que se palpa y hay veces que no; que si es posible que si esta persona tenía una desviación hubiera quedado con algún tipo de desfiguración declaró que es posible que pudiera quedar con alguna desfiguración.

"El Dr. A. Vera concurrió con la opinión del Dr. M. Calcagno."

El hermano del obrero según la resolución de la Comisión, declaró que después del accidente la nariz le quedó desviada hacia la derecha y que al hablar se notaba fañoso.

Fundándose en el testimonio del hermano del obrero e ignorando la opinión expresada por el perito del Fondo, con la cual concurrió el asesor médico de la Comisión, se aumentó a un 50% la compensación por desfiguración del rostro suma

esta que ordenó pagar "a los beneficiarios o herederos de este obrero."

■ La contención del Administrador del Fondo al efecto de que la Comisión Industrial carecía de facultad para conceder compensación por desfiguración, ya que ni su oficina ni el obrero la había solicitado, no tiene mérito. La Comisión tiene amplia facultad para otorgar compensación adicional por este concepto, establecido que el caso lo justifique. El hecho de que se recurrió de la determinación del Administrador por estar inconforme con lo concedido, equivale a una solicitud de que se le conceda todo lo que la ley le da derecho, incluyendo lo que autoriza a conceder por desfiguración. El proceso administrativo no debe estar preñado de formalidad.

El Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 3, en su parte pertinente dispone *"que en los casos en que una cicatriz, quemadura o cualquier cambio en la fisonomía cause la desfiguración de la cara,* cabeza o cuello o de una o ambas de las manos o brazos del lesionado, *a solicitud del Administrador del Fondo del Seguro del Estado o del obrero o empleado lesionado* la Comisión Industrial decidirá de acuerdo con la gravedad de la lesión cuánto debe compensarse por este concepto. En ningún caso se pagará por la desfiguración de la cara, cabeza o cuello del lesionado una suma mayor de tres mil (3,000) dólares y en el caso de desfiguración de las manos o brazos de mil seiscientos (1,600) dólares. En los casos de desfiguración de manos o brazos no se compensará este concepto si la desfiguración se tomó en consideración al fijar alguna compensación por incapacidad de dicha mano o brazo. *La Comisión Industrial graduará esta compensación tomando en consideración la importancia de la desfiguración, la profesión y oficio y sexo de la persona lesionada...."* (Énfasis suplido.)

■ La compensación por desfiguración está bien generalizada en las jurisdicciones estatales. Los estatutos de casi todos los estados de la Unión Americana la conceden. 2 Larson,

*Workmen's Compensation,* Sec. 58.30 (1974) ; Farleigh, *Disfigurement Awards Under Oregon's Workmen's Compensation,* 52 Ore. L. Rev. 190 (1973). En algunas jurisdicciones se la otorgan aun sin que los estatutos expresamente la autoricen, por entender que el hacerlo es consistente con el propósito básico de las leyes que autorizan compensación por accidentes del trabajo. 52 Ore. L. Rev. 190, *supra.* Generalmente se requiere que la desfiguración sea seria y permanente y que afecte la capacidad de conseguir empleo. *St. Laurent* v. *Kaiser Aluminum,* 316 A.2d 504 (R.I. 1974) ; *Beaver* v. *Allied Chemical Corp.,* 281 A.2d 594 (Del. 1971) ; *Dykes* v. *North River Insurance Co.,* 270 So.2d 329 (1972) ; *Bowen* v. *Chiquola Manufacturing Company,* 120 S.E.2d 99 (N.C. 1961) ; 2 Schneider's *Workmen's Compensation,* Sec. 2337 (3ra. ed. 1957) ; 2 Larson's, *Workmen's Compensation,* Secs. 58.30, 58.32, 65.30 (ed. 1974) ; Farleigh, *Disfigurement Awards Under Oregon's Workmen's Compensation,* supra.

Una lectura de nuestro estatuto demuestra que la intención del legislador fue que en los casos de desfiguración de la cara, cabeza o cuello, la compensación se conceda en adición a la compensación que por incapacidad otorga la ley y que al concederla "[l]a Comisión ... graduará esta compensación tomando en consideración la importancia de la desfiguración, la profesión y oficio y sexo de la persona lesionada." Es evidente que para que la desfiguración sea compensable la misma debe ser de tal naturaleza que afecte la habilidad del obrero para obtener y retener un empleo. Tiene que ocasionar un cambio que cause la desfiguración de la cara y tomar en cuenta, la profesión y oficio y sexo de la persona lesionada.

En el presente caso la prueba pericial presentada—el testimonio del perito del Fondo con el cual concurrió el asesor médico de la Comisión—fue al efecto de que el hueso que divide las dos fosas nasales sufrió una pequeña desviación hacia el lado derecho por lo que se le concedió un 10% de

incapacidad fisiológica general. Declaró el perito del Fondo que la nariz "no estaba en la posición normal y eso se ve en la nariz normal aunque no haya fractura", y que hubiera sido difícil percatarse de la desviación. Esta pequeña desviación en la nariz de un obrero de oficio mensajero en nada afectaba su capacidad de obtener o retener su empleo. Era ciertamente improcedente, a la luz de lo dispuesto en la ley, conceder compensación por desfiguración.

*Se revocará la resolución de la Comisión Industrial en aquella parte que concedió compensación por desfiguración, y se ordenará pagar el 10% concedido por el Fondo por incapacidad fisiológica general, a la madre del obrero, única dependiente de éste.*