FERNANDO BAERGA RODRÍGUEZ, recurrido, *v.* FONDO DEL SEGURO DEL ESTADO, recurrente.

*Número:* CI-91-222 *Resuelto:* 25 de enero de 1993

526

*José M. Fernández Luis,* abogado del Administrador del Fondo del Seguro del Estado; *Leopoldo Bonilla,* abogado del recurrido.

El Juez Asociado Señor Alonso Alonso emitió la opinión del Tribunal.

¿Debe la Comisión Industrial (en adelante la Comisión) celebrar, al momento de otorgar una compensación en concepto de desfiguración de un obrero lesionado, una vista en la que el asegurador (Fondo del Seguro del Estado) pueda cuestionar si procede o no la determinación de desfiguración, la de compensación por tal condición y/o el por ciento de ésta? Esa es la cuestión que ha de dilucidarse en este caso.

Resolvemos que la Comisión viene obligada a celebrar una vista informal y sumaria en la que el Fondo del Seguro del Estado (en adelante el Fondo) tenga plena participación como parte al momento de hacer la determinación de desfiguración y fijar la compensación o el por ciento en dicho concepto a favor de un obrero lesionado. Por ello, revocamos la resolución de la Comisión que se negó a celebrar dicha vista en este caso.

## I

El Sr. Fernando Baerga Rodríguez (en adelante el obrero) era un obrero de mantenimiento que trabajaba para la Administración de Vivienda Pública.([1]) El 18 de octubre de 1988, el obrero sufrió un accidente en el trabajo cuando fue a botar un inodoro que sacó de una vivienda de un residencial público, donde se realizaban obras de repa-

---

([1]) A la fecha del accidente era casado y tenía cuarenta y nueve (49) años de edad.

ración, y se le encajó el brazo izquierdo en el contenedor de la basura en donde tiró el inodoro. Ello le produjo una herida incisiva en el antebrazo izquierdo, región dorsal, a un tercio del radio.

El obrero acudió al Fondo donde, luego de brindarle el máximo beneficio de tratamiento, fue dado de alta definitiva el 18 de abril de 1989. *No se le concedió incapacidad alguna.*

Inconforme con esa determinación, el obrero acudió en apelación a la Comisión. Adujo el obrero que continuaba con fuerte dolor en el brazo, el cual se agudiza en el codo y la muñeca, por lo que solicitó tratamiento médico adicional y que le fuera asignada la correspondiente incapacidad.

La Comisión señaló una vista médica —sobre la apelación en cuanto al tratamiento médico e incapacidad— para el 24 de julio de 1989. Celebrada esa vista médica, tanto el médico asesor del Fondo como el de la Comisión recomendaron confirmar la decisión del Fondo objeto de apelación. De acuerdo con el examen médico, el obrero presentaba un ligero dolor a la palpitación de la herida, pero los movimientos de la muñeca estaban conservados y el agarre, puño y pinza estaban normales. No encontraron ninguna condición física o emocional incapacitante.

No obstante, ambos galenos recomendaron referir al obrero lesionado ante la Comisión para que ésta evaluara si procedía una determinación de desfiguración.

Así las cosas, la Comisión citó al obrero para una evaluación sobre desfiguración, *ante uno de los Comisionados*, el 14 de noviembre de 1989. *A dicha evaluación no fue citado el Fondo.* Lo acontecido en esa ocasión fue recogido en la resolución sobre desfiguración emitida por la Comisión el 15 de noviembre de 1989. En lo pertinente se lee:

> En este caso se *citó al lesionado* para que compareciera ante la Comisión Industrial para evaluación de la desfiguración que presenta en su brazo izquierdo como resultado del accidente sufrido en 18 de octubre de 1988.

El lesionado presenta *una cicatriz en el antebrazo izquierdo de aproximadamente tres pulgadas de longitud y de 0.5 centímetros de ancho..*

El obrero es casado, de 49 años de edad, y trabaja en mantenimiento, para la Administración de la Vivienda Pública.

*Sometido el aspecto desfigurante a la apreciación visual del Comisionado, Sr. Luis A. Duprey Figueroa, éste determinó, después de tomar en consideración la ocupación, sexo e importancia de la desfiguración, que existe un cambio en el brazo izquierdo del obrero, el cual amerita un 100 por ciento de desfiguración.*

POR LO ANTERIORMENTE EXPUESTO, la Comisión Industrial RESUELVE fijar al lesionado una desfiguración equivalente a un 100 por ciento por brazo, de la cantidad que la Ley dispone para estos casos. (Énfasis suplido.) Resolución de 15 de noviembre de 1989.

En conformidad con su resolución, la Comisión ordenó al Fondo compensar al obrero por la desfiguración. Esa resolución fue notificada al Fondo.

Inconforme con la determinación de desfiguración, el Fondo apeló ante la Comisión. Adujo que la determinación no se ajustaba a la Ley de Compensaciones por Accidentes del Trabajo y que "no fue citado para vista Pública [sic] donde pudiese hacer los planteamientos jurídicos de rigor". Apelación de 8 de diciembre de 1989. A tenor con ello, solicitó a la Comisión que dejara sin efecto la resolución emitida en este caso y citara a vista pública.

Mediante Resolución de 8 de enero de 1990, la Comisión declaró sin lugar la apelación del Fondo y le ordenó cumplir con su resolución anterior en la que fijó un cien por ciento (100%) de desfiguración en este caso.

El Fondo solicitó la reconsideración a la Comisión. A través de una parca "Resolución Reconsideración", la Comisión denegó la solicitud del Fondo y nuevamente le ordenó que cumpliera con su resolución sobre desfiguración.

De esa determinación acude el Fondo ante nos. Aduce que:

1. Erró la Honorable Comisión Industrial al otorgar compen-

sación por concepto de desfiguración, con cargo al Fondo del Seguro del Estado, sin notificación al obligarlo al pago. (Sic)

a) Cuestión constitucional sustancial.

Si un Organismo cuasi judicial puede, de forma compatible con la Constitución del Estado Libre Asociado de Puerto Rico, ordenar el pago de compensaciones sin ningún tipo de vista donde el afectado le sea posible defenderse o establecer la improcedencia del pago.

2. Erró la Honorable Comisión Industrial al negarle al Fondo del Seguro del Estado el derecho a apelar una Resolución perjudicial al interés público. Ello, en forma opuesta a lo establecido en el artículo 10 de la Ley Núm. 45 del 18 de abril de 1935 y la doctrina de este Honorable Tribunal, *F.S.E. vs. Com. Ind.*, 105 DPR 261. Solicitud de revisión, pág. 4.

Expedido el auto, las partes han comparecido en apoyo a sus respectivas contenciones. Resolvemos.

## II

La resolución de la controversia ante nos exige, en primera instancia, analizar someramente el andamiaje estructural creado por la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq.*([2])

 Como estructura general, la referida ley establece que corresponde, en primera instancia, al Administrador del Fondo adjudicar las cuestiones de compensabilidad de las lesiones. *González v. Comisión Industrial*, 60 D.P.R. 622 (1942); *Cordero, Admor. v. Comisión Industrial*, 61 D.P.R. 466 (1943); S.P. Amadeo, *La revisión judicial de la Comisión Industrial de Puerto Rico*, 15 Rev. Jur. U.P.R. 121, 124–125 (1946). Luego, la Comisión revisa esas determinaciones. *Cf. Montaner, Admor. v. Comisión Industrial*, 51 D.P.R. 460 (1937); *Torres Rivera v. Comisión In-*

---

([2]) Mediante la Ley Núm. 83 de 29 de octubre de 1992 (11 L.P.R.A. secs. 1–1a, 1b-1–1b-4, 1c, 8, 30–30d, 39 y 1) se reformó el sistema de compensaciones por accidentes del trabajo. Dicha ley, sin embargo, no aplica a los hechos de este caso ni provee para la vista aquí dispuesta.

*dustrial*, 85 D.P.R. 620 (1962). Así que, como regla general, la Comisión actúa en estos casos como tribunal apelativo a nivel administrativo. En el ejercicio de esas funciones revisoras, de naturaleza cuasi judicial, representa al interés público y no a los intereses de las partes. *Cf.* Art. 6(b) de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 87(b). Adviértase que el esquema de la Ley Núm. 45 de 18 de abril de 1935 (11 L.P.R.A. sec. 1 *et seq.*) no le concede al Fondo la facultad expresa en ley para revisar o reconsiderar sus propias decisiones. *Cf.* Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 11.[3]

■ Ahora bien, los casos de compensación por *desfiguración* se apartan de ese esquema general de la ley. Ello es así por cuanto *la ley le concede facultad a la Comisión para que, en primera instancia, adjudique la procedencia y el monto de la compensación por este concepto.*

El Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 3, dispone con respecto a la desfiguración que:

> ... en los casos en que una *cicatriz*, quemadura o cualquier cambio en la fisonomía *cause la desfiguración* de la cara, cabeza o cuello o de *una o ambas* de las manos o *brazos del lesionado*, a solicitud del Administrador del Fondo del Seguro del Estado o del obrero o empleado lesionado *la Comisión Industrial decidirá de acuerdo con la gravedad de la lesión cuán[t]o debe compensarse por este concepto.* En ningún caso se pagará por la desfiguración de la cara, cabeza o cuello del lesionado una suma mayor de tres mil (3,000) dólares y en el caso de desfiguración de las manos o brazos de mil seiscientos (1,600) dólares. *En los casos de desfiguración de manos o brazos no se compensará este concepto si la desfiguración se tomó en consideración al fijar alguna compensación por incapacidad de dicha mano o brazo.*

---

[3] Aunque el Fondo del Seguro del Estado (en adelante el Fondo) y la Comisión Industrial (en adelante la Comisión) administran la misma ley, operan con independencia de criterios. 11 L.P.R.A. sec. 8.

La Comisión Industrial graduará esta compensación *tomando en consideración la importancia de la desfiguración, la profesión y oficio y sexo de la persona lesionada* .... (Énfasis suplido.)

En *Alonso García v. Comisión Industrial*, 102 D.P.R. 741, 744–745 (1974), resolvimos que *para ser compensable la desfiguración del obrero tiene que ser seria y permanente, y que afecte la capacidad de éste para conseguir y/o retener un empleo.* Para ello, la ley establece los criterios que debe considerar la Comisión para adjudicar la desfiguración y graduar la compensación que ha de ser otorgada en casos en que proceda, a saber: gravedad o importancia de la desfiguración, profesión u oficio, así como el sexo del obrero lesionado. En cuanto al criterio de gravedad de la desfiguración cabe señalar que es uno que requiere, en gran medida, de evidencia y peritaje médico. *Cf. Alonso García v. Comisión Industrial*, supra.

De lo anterior se desprende que la determinación de desfiguración requiere el ejercicio discrecional de una facultad original que le reconoce la ley a la Comisión. Claro está, como en inumerables decisiones hemos sostenido, el ejercicio de la discreción conlleva, a su vez, el ejercicio *razonable* de la facultad o poder que le fue delegado por la ley al organismo que toma la decisión. *Cf. Pueblo v. Lacroix Correa*, 127 D.P.R. 557 (1990), y casos allí citados. Su antónimo es el capricho o la arbitrariedad al decidir.

En esa tarea la Comisión se despoja de su carácter tradicional de organismo revisor de adjudicaciones del Fondo para ella funcionar como organismo adjudicativo. ¿Podía la Comisión en tal capacidad adjudicar la cuestión de la desfiguración del empleado sin la presencia y participación de una de las partes: el Fondo?

El Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo, *supra,* nada dispone sobre el particular. Ello, claro está, no impone la conclusión de que no es ne-

cesaria la presencia y participación del Fondo en tal determinación. Se impone, en primer lugar, examinar si de las otras disposiciones de la ley compensatoria([4]) o de otras leyes surge la obligación de la Comisión de dar audiencia y participación al Fondo en su determinación sobre compensabilidad de una lesión desfigurante.

## III

El Art. 10 de la Ley de Compensaciones por Accidentes del Trabajo, *supra*, dispone, en lo pertinente, que

> ... una vez radicada [sic] una apelación por un obrero lesionado, *en que esté envuelta una cuestión médica*, éste será examinado en una vista médica por médicos del Fondo del·Seguro del Estado y de la Comisión Industrial conjuntamente, y por el médico que el obrero tuviere a bien traer y de la resolución que dictare la Comisión Industrial a base del informe médico que se rinda como resultado del examen practicado, la cual será firmada por un solo Comisionado, el obrero podrá solicitar la celebración de una vista pública dentro de un término que no excederá de treinta (30) días.

En *F.S.E. v. Comisión Industrial*, 105 D.P.R. 261 (1976), interpretamos el referido artículo. Ante la petición del Fondo de igual derecho a vista pública para dilucidar cuestiones conflictivas sobre prueba pericial médica, expresamos:

> El Art. 10 citado de la Ley de Compensaciones por Accidentes del Trabajo expresa inicialmente que el obrero puede apelar ante la Comisión Industrial de las determinaciones del Administrador del Fondo. Ya aquí se traba la controversia. *El Fondo es obviamente parte de la misma. Vide: Colón* v. *Comisión Industrial*, 52 D.P.R. 1 (1937). No se le puede borrar del récord; no

---

([4]) Reiteradamente hemos resuelto que las disposiciones de la ley deben interpretarse en conjunto, las unas con las otras, porque lo que es oscuro en unas puede ser aclarado por las demás. *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 90 (1983); *Delgado v. D.S.C.A.*, 114 D.P.R. 177, 182 (1983); *Rocafort v. Álvarez*, 112 D.P.R. 563, 571 (1982).

se le puede ordenar, como al genio de Aladino, que regrese a la lámpara. Luego el estatuto requiere que se celebre una vista médica, sin que nadie tenga que solicitarla, de así exigirlo la naturaleza del caso. Entonces se expresa que, de no estar conforme el obrero con la resolución que en consecuencia dicte la Comisión, el obrero podrá solicitar una vista pública. ¿Significa esto que es solo el obrero el que tiene el derecho a ventilar su inconformidad en esta forma? ¿Que de complacerle al obrero la resolución de la Comisión —como le complacería cualquier decisión a su favor— pierde el Fondo su derecho a ser oído? *No hemos hallado nada en el historial legislativo de la disposición concernida que le atribuya tal significado, ni razón de otro orden que prive de oportunidad a ninguna de las partes a desfilar prueba y a contrainterrogar a los peritos contrarios sobre la controversia médica surgida.* (Énfasis suplido.) *F.S.E. v. Comisión Industrial*, supra, págs. 264–265.

Véase, además, *Meléndez Santana v. Comisión Industrial*, 109 D.P.R. 393, 395 (1980). Aunque reconocemos que la determinación de desfiguración no es solamente una determinación médica, no es menos cierto que en gran medida y en muchos casos esa evidencia y peritaje médicos sirve como el mejor criterio para fundamentar su gravedad. *Cf. Alonso García v. Comisión Industrial*, supra. Siendo ello así, no vemos cómo no deba concedérsele igual oportunidad al Fondo para dirimir en una vista, con su participación como parte, cualquier controversia surgida con la Comisión sobre la determinación de ésta de conceder una compensación por desfiguración.

■ Pero además, nuestro ordenamiento legal le impone a la Comisión ese procedimiento cuando ésta funge como organismo adjudicativo. La Ley Núm. 170 de 12 de agosto de 1988, comúnmente conocida como Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2101 *et seq.*, establece un cuerpo de reglas mínimas para proveer uniformidad al proceso decisional de las agencias públicas del Estado Libre Asociado. La Comisión Industrial *no está exenta* de las disposiciones de esta ley. 3 L.P.R.A. sec. 2102(a).

■ En *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992), resolvimos que a la Comisión le aplicaban aquellas disposiciones de dicha ley que regulan el procedimiento administrativo de *adjudicación formal* de controversias ante su consideración, *cf.* 3 L.P.R.A. sec. 2102(k), en especial la reconsideración y revisión de su dictamen administrativo.[5]

■ Ahora bien, la adjudicación de una controversia sobre desfiguración debe seguir un procedimiento *informal* y *sumario*, 2B *Larson's Workmen's Compensation Law* Sec. 77(A). Como se señala en *Larson's*, supra, págs. 15-1–15-2:

> The adjective law of workmen's compensation, like the substantive, takes its tone from the *beneficent and remedial character of the legislation. Procedure* is generally *summary* and *informal.* The initial handling of claims, and perhaps the first review, are administrative in all but a few states. *The whole idea is to get away from the cumbersome procedures and technicalities of pleading, and to reach a right decision by the shortest and quickest possible route.* (Énfasis suplido y escolios omitidos.)

Claro está, ello no significa que so pretexto de la informalidad se obliteren las garantías mínimas del proceso justo y equitativo. La política pública de la Ley Núm. 170, *supra*, es precisamente alentar este tipo de procedimiento para solucionar controversias pero sin menoscabar los derechos reconocidos a las partes por la propia ley. Ésta garantiza que la rapidez, justicia y economía del procedimiento logren y estén enmarcadas en una solución equitativa de los casos. A tono con esa política pública, la Ley Núm. 170, *supra*, dispone que en los procedimientos administrativos no considerados en la ley, la agencia de-

---

[5] La Ley Núm. 92 de 5 de diciembre de 1991 (4 L.P.R.A. secs. 301, 35, 61, 121(a), 181(a), 191, 191 n. y 307 n., y 32 L.P.R.A. sec. 2872) enmendó la Ley de la Judicatura para remitir al Tribunal Superior las revisiones de las decisiones de la Comisión, entre otros. Dicha ley fue enmendada, a su vez, por la Ley Núm. 21 de 10 de julio de 1992 (4 L.P.R.A. secs. 1, 35, 61, 61a, 121, 37-1, 191, 231(a)-(d) y 1n.) disponiendo que dichas decisiones serán revisadas por el Tribunal de Apelaciones de Puerto Rico.

berá reglamentar su práctica a tono con sus disposiciones. Véase Ley Núm. 170, 1988 Leyes de Puerto Rico 849.

■ Por lo tanto, en la adjudicación informal de una desfiguración la Comisión viene obligada a brindarle al Fondo las garantías procesales *mínimas* que la Ley Núm. 170, *supra*, reconoce que se le deben garantizar a las partes en la adjudicación formal de una controversia. 3 L.P.R.A. secs. 2151–2170a.

■ Nadie debe dudar que en la adjudicación de la controversia sobre desfiguración el Fondo es parte interesada. *Cf. F.S.E. v. Comisión Industrial*, supra, págs. 264–265; 3 L.P.R.A. sec. 2102(j). Como tal, tiene derecho a que se le notifique adecuadamente el reclamo en su contra y de la celebración de la vista informal y sumaria de tipo adjudicativa; a presentar evidencia a favor de los intereses que la ley le encomendó defender, 11 L.P.R.A. sec. 8; a tener una adjudicación imparcial basada en el expediente del caso; a reconsiderar una resolución que le sea adversa, y a revisar judicialmente ésta, entre otros derechos. *Cf.* 3 L.P.R.A. sec. 2151 *et seq.*([6])

## IV

En el caso ante nos está en juego la compensación por desfiguración que reconoce el Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 3.([7])

---

([6]) Para la fecha en que la Comisión adjudicó esta controversia ya la Ley Núm. 170 de 12 de agosto de 1988 (3 L.P.R.A. sec. 2101 *et seq.*) había entrado en vigor. *Cf.* Sec. 8.4 de dicha ley, 3 L.P.R.A. sec. 2101 n.; *Mar-Mol Co., Inc. v. Adm. Servicios Gens.*, 126 D.P.R. 864 (1990). Dicha ley introduce cambios procesales sustanciales en la tramitación de casos administrativos. Generalmente, los cambios procesales introducidos por la ley tienen carácter retroactivo en cuanto a casos pendientes de adjudicación final. *Cf. Rodríguez v. Comisión Industrial*, 97 D.P.R. 432, 436–437 (1969); R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, págs. 400–401.

([7]) En *Alonso García v. Comisión Industrial*, 102 D.P.R. 741 (1974), reconocimos la generalización de este tipo de compensación en las jurisdicciones estatales de

Esa compensación, que en la actualidad fija la Comisión en un procedimiento independiente y *ex parte, le corresponde pagarla al Fondo.* Sin duda que el interés pecuniario del Fondo, *que maneja fondos públicos,* se ve afectado con el procedimiento de fijar la incapacidad y el por ciento de desfiguración de un obrero lesionado.

Por otro lado, al fijar la desfiguración y su por ciento, la Comisión tiene que considerar unos factores subjetivos (como gravedad e importancia de la desfiguración, que ésta sea incapacitante, etc.). Esa decisión discrecional, sin duda, conlleva el riesgo inherente de cometer errores al fijar el grado o los excesos al conceder el por ciento de compensación. Resultaría, pues, de significativa valía establecer los mecanismos y las salvaguardas necesarios para ajustar dicha compensación a la prueba sobre desfiguración real.

■ Ahora bien, por disposición expresa de la ley, las compensaciones otorgadas por dicho estatuto son de carácter remedial. 11 L.P.R.A. sec. 2. Por ello, los procedimientos para su otorgación deben ser sumarios e informales, de manera que se evite caer en tecnicismos que retarden el remedio rápido y justo que intenta proveer la ley al obrero. *Larson's,* supra. Sin duda que la Comisión busca proteger ese interés al realizar el proceso de fijar compensación del modo que en la actualidad lo lleva a cabo.

El reconocimiento al Fondo, por parte de la Comisión, de la oportunidad de defenderse en una vista, para oponerse a la determinación y fijación del por ciento de desfiguración en estos casos, no acarrea tardanzas excesivas en el proceso. De hecho, la Comisión viene obligada a celebrar este tipo de vistas en casos en que la evidencia médica de ambos organismos es conflictiva en cuanto a la incapacidad de un obrero. Art. 10 de la Ley de Compensaciones por

Estados Unidos. Véanse: 1C *Larson's Workmen's Compensation Law* Sec. 58.30 (1992) y *Larson's,* Vol. 4, Ap. B., Tabla 13.

Accidentes del Trabajo, *supra*; *F.S.E. v. Comisión Industrial*, supra. No tenemos conocimiento de que ello haya retrasado indebidamente el remedio que la ley intenta brindar a los obreros y empleados cubiertos por el estatuto.

En conclusión, en el balance de los intereses en conflicto la balanza se inclina a favor de brindarle la oportunidad al Fondo de objetar en una vista, informal y sumaria, si procede la compensación por desfiguración o el por ciento de incapacidad que la Comisión otorga en estos casos.

La naturaleza reparadora y la liberalidad con que se debe interpretar el estatuto y la necesidad de un proceso sumario e informal no puede afectar la solidez financiera del Fondo, en perjuicio de otros trabajadores, sin que se le permita a dicho organismo cuestionar la adjudicación hecha por la Comisión. *Cf. Admor. Int. v. Comisión Industrial*, 98 D.P.R. 40, 44 (1969). Para ello, la Comisión debe garantizarle a las partes afectadas el mínimo irreductible de garantías procesales que hemos reconocido como justos y equitativos. *Ortiz Cruz v. Junta Hípica*, 101 D.P.R. 791 (1973); *López Vives v. Policía de P.R.*, 118 D.P.R. 219 (1987); *Henríquez v. Consejo Educación Superior*, 120 D.P.R. 194 (1987). Deberá, pues, la Comisión brindarle notificación adecuada al Fondo, ofrecerle la oportunidad de confrontarse con la prueba de la otra parte, así como presentar la suya y presentar los argumentos en su defensa.

Del mismo modo, una vez tomada una decisión que le sea adversa, el Fondo tiene derecho a acudir a la Comisión a solicitar la reconsideración,[8] 11 L.P.R.A. sec. 11, así como a revisarla judicialmente, 11 L.P.R.A. sec. 12.

---

[8] *Cf. General Tire Co. v. Industrial Com'n*, 750 P.2d 1377 (Ariz. 1988); *United Brands Co. v. Melson*, 569 F.2d 214 (5to Cir. 1978); *I.T.O. Corp. of Baltimore v. Benefits R. Bd., Etc.*, 542 F.2d 903 (4to Cir. 1976).

Adviértase que conforme a la Ley Núm. 170, *supra*, dicha reconsideración es requisito jurisdiccional para solicitar la revisión judicial. 3 L.P.R.A. sec. 2165; *Pagán Ramos v. F.S.E.*, 129 D.P.R. 888 (1992).

# VI

Examinemos los hechos particulares del caso ante nos. Aquí el Fondo no fijó incapacidad compensable alguna por los daños que sufrió el obrero en el accidente laboral. Inconforme con esa determinación, el obrero lesionado apela a la Comisión una vez fue dado de alta definitiva por el Fondo. La Comisión ordenó celebrar una vista médica sobre continuación de tratamiento médico e incapacidad. En esa vista los médicos, del Fondo y de la Comisión, recomendaron confirmar la decisión del Fondo de no conceder incapacidad alguna por el accidente.

No obstante, acordaron los galenos referir al obrero a la Comisión (que en realidad es una evaluación visual por uno de los Comisionados) para evaluar si procedía una determinación de desfiguración.

En su alegato ante nos la Comisión aduce que esta vista fue suficiente oportunidad para que el Fondo adujera sus argumentos en contra de la determinación de la Comisión. Va más lejos la Comisión y señala que, una vez el médico del Fondo acordó con el de la Comisión referir al paciente a la evaluación visual del Comisionado, renunció a cuestionar la determinación de si procedía o no la desfiguración y del por ciento de desfiguración que éste hiciera en el caso. Esa posición no puede prevalecer.

En primer lugar, surge de la propia citación de la Comisión a las partes, para la vista médica celebrada, que ésta se limitaba a determinar si el obrero era acreedor a continuar recibiendo tratamiento médico o si sufría una incapacidad compensable de acuerdo con lo que éste adujo en su escrito de apelación ante la Comisión. No se trataba de determinar la existencia o no de una desfiguración.

En segundo lugar, aun cuando se interpreta el referido que hace el médico del Fondo a la Comisión como una continuación de la vista médica, no se puede concluir

que ella es válida renuncia al derecho del Fondo a ser oído durante esa continuación de vista médica. Como señalamos en *F.S.E. v. Comisión Industrial*, supra, págs. 265–266:

> No se ha argumentado, pero vale considerar si la acción del médico del Fondo, al no expresar, según la práctica, la razón de su disenso en el informe escrito sobre la vista médica constituyó una renuncia del derecho a vista por parte del Fondo. No lo estimamos así. *Las renuncias deben ser claras y conscientes. Cuando se trata de derechos fundamentales surge de hecho una presunción contraria a la renuncia. Edelman* v. *Jordan,* 415 U.S. 651 (1974); *Brady* v. *United States,* 397 U.S. 742, 748 (1970); *Ohio Bell Tel. Co.* v. *Public Utility Commission,* 301 U.S. 292 (1937). *Contrario a lo resuelto en la Comisión Industrial, el Fondo tiene derecho a que se diriman en vista pública, con su plena participación como parte, las controversias surgidas entre los médicos asesores de la Comisión y los del Fondo.*

Aquí en lo único que estuvieron de acuerdo ambos médicos fue en la descripción de la cicatriz en el antebrazo izquierdo del obrero.

En tercer lugar, por mandato de ley, corresponde a la Comisión determinar si el obrero sufrió o no una desfiguración y el monto de la compensación. En esa determinación, sin duda que la Comisión considera la evidencia médica en el récord. Pero no corresponde a los médicos la determinación final sobre la desfiguración. Ello es así porque, además de la evidencia médica (la cual generalmente va dirigida al aspecto de la gravedad de la desfiguración), corresponde a la Comisión determinar si la desfiguración incapacita total o parcialmente al obrero para retener o conseguir empleo conforme al sexo, profesión y oficio de éste.

En cuarto lugar, siguiendo el "procedimiento usual y sencillo que se ha seguido por ... la Comisión Industrial desde que se aprobó la Ley que [la] crea",(9) la Comisión

---

(9) Alegato del recurrido, pág. 4.

citó sólo al obrero para la evaluación visual ante uno de sus Comisionados. El Fondo no fue, como nunca ha sido, citado para esa evaluación. Allí el Comisionado determinó un cien por ciento (100%) de desfiguración del antebrazo izquierdo del obrero por éste tener una cicatriz de aproximadamente tres (3) pulgadas de longitud y .5 centímetros de ancho en la región dorsal, a un tercio del radio, de dicho antebrazo;[10] siendo éste obrero casado, de cuarenta y nueve (49) años de edad, que trabajaba en mantenimiento en la Administración de Vivienda Pública.

Pero más aún, luego de emitida esa determinación, el Fondo solicitó oportunamente apelación ante la Comisión y la celebración de una vista por no estar conforme con tal determinación. Sin fundamento legal de clase alguna la Comisión denegó dichos remedios. Solicitada por el Fondo la oportuna reconsideración, nuevamente la Comisión le negó la oportunidad de oponerse a su determinación. Esta vez limitó su resolución a exponer el trámite procesal.[11]

Si algo surge claro de ese trámite es que el Fondo no ha tenido la oportunidad, en algún momento significativo u oportuno, de defender los intereses que la ley le encomendó proteger en casos como éste. El trámite seguido por la Comisión dista mucho de ser el proceso justo y equitativo, regido por las reglas de juego limpio. Ese trámite "llamado sencillo y rápido" hace recordar tiempos pretéritos, ya superados, cuando las controversias eran resueltas en cáma-

---

[10] Adviértase que en este caso se concede compensación por la desfiguración del brazo en vista de que el Fondo no compensó al obrero con incapacidad alguna, luego de brindarle el máximo de tratamiento. Contrario a la desfiguración de la cara, cabeza o cuello (en la cual la desfiguración es adicional a cualquier incapacidad otorgada por ley, *Alonso García v. Comisión Industrial*, supra), la de los brazos o manos no se compensa de manera adicional si se toma en consideración el aspecto desfigurante al compensar por la incapacidad de dicho brazo o mano. Art. 3 de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 3.

[11] Nos llama poderosamente la atención que el expediente de este caso ante la Comisión, tal cual fue elevado a este Foro, contenga un proyecto de resolución en el cual se recomienda acoger la reconsideración del Fondo y ordenar a la secretaria de la Comisión señalar el caso para vista pública. Dicho proyecto contiene una amplia fundamentación legal de tal recomendación.

ras cerradas sin participación de los afectados por las decisiones allí tomadas.

Si bien la Comisión pudo subsanar la ausencia de una vista anterior, una vez le fue solicitada la apelación o reconsideración, obstinadamente aquí no lo hizo. *Cf. Rodríguez v. Tribunal Superior*, 104 D.P.R. 335 (1975); *Vega Cruz v. Comisión Industrial*, 109 D.P.R. 290 (1979). Este Foro no va a refrendar ese proceder.[12]

Sin duda que en ciertas circunstancias el Fondo puede estar de acuerdo con la Comisión en la existencia y procedencia de la compensación por desfiguración y sólo cuestionar el por ciento concedido. En otras, como en la de autos, puede no estar de acuerdo ni con lo uno ni con lo otro. En vista de que corresponde al Fondo realizar la erogación de los fondos que como compensación fije la Comisión, dicho organismo tiene derecho a que se le brinde la oportunidad de ser partícipe en la adjudicación de tal controversia. Ello, no por capricho, sino por imperativos de la justicia y equidad con que se debe tratar a las partes interesadas. Claro está, del mismo modo la conducta del Fondo en la tramitación del caso puede reflejar una clara y consciente renuncia a ese derecho. Ése, sin embargo, no es el caso ante nos.

Por los fundamentos expuestos, *se revoca la resolución recurrida y se devuelve el caso a la Comisión para que dicho organismo señale vista en la que brinde oportunidad al Fondo de cuestionar la adjudicación de desfiguración o el por ciento de compensaciones en tal concepto concedido en este caso.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Negrón García se inhibió.

---

[12] En casos como el de autos no se trata de una agencia que actúa ante una situación de emergencia en pro del bienestar y la salud general o que está involucrada la seguridad nacional, o que sea necesario instrumentar una política pública sin oportunidad de conceder audiencia a una de las partes afectadas.