FONDO DEL SEGURO DEL ESTADO, recurrente, *v.* COMISIÓN INDUSTRIAL DE PUERTO RICO ET AL., demandada.

*Número:* O-76-152    *Resuelto:* 8 de octubre de 1976

*Francisco Falú Lebrón* y *Guillermo Figueroa Prieto,* abogados del recurrente; la Comisión Industrial de Puerto Rico no compareció.

PER CURIAM: Nos compete resolver en este caso si puede la Comisión Industrial negarle oportunidad al Fondo del Seguro del Estado de dirimir en vista pública controversias entre los médicos asesores de la Comisión y los del Fondo.

El Fondo les fijó a cuatro obreros lesionados el correspondiente grado de incapacidad por pérdida de sus funciones fisiológicas. Los cuatro apelaron a la Comisión Industrial. Tres de ellos solicitaron que se les aumentase el por ciento de incapacidad fijado por el Fondo. El cuarto, Manuel Nieves Santana, solicitó tratamiento adicional, cosa que el Fondo le había denegado a base de la recomendación de su perito médico. Se señalaron vistas médicas en todos los casos, sur-

giendo discrepancias entre los peritos del Fondo y los de la Comisión. Sin señalamiento de vista para dilucidar estas diferencias, la Comisión resolvió aumentar el por ciento de incapacidad en tres de los casos a tono con la recomendación de sus asesores médicos y devolver el de Manuel Rivera Santana para reexamen y tratamiento adicional.

El Fondo radicó moción de reconsideración ante la Comisión Industrial, quejándose de que no se le concedió oportunidad de presentar prueba para fundamentar las recomendaciones de su médico asesor quién, siguiendo la práctica establecida, se había limitado en su informe a consignar su disenso. Protestó también el Fondo de que se le había privado del derecho a contrainterrogar al perito de la Comisión. Se denegó la moción, disintiendo un Comisionado de tal fallo. De estas resoluciones de la Comisión Industrial es que se recurre ante nos.

El Art. 10 de nuestra Ley de Compensaciones por Accidentes del Trabajo, según enmendada por la Ley Núm. 63 de 10 de junio de 1974, 11 L.P.R.A. sec. 11, dispone en parte:

"Si el obrero o sus beneficiarios, no estuvieren conformes con la decisión dictada por el Administrador del Fondo del Seguro del Estado en relación con su caso podrán apelar ante la Comisión Industrial . . . disponiéndose . . . que una vez radicada una apelación por un obrero lesionado, en que esté envuelta una cuestión médica, éste será examinado en una vista médica por médicos del Fondo del Seguro del Estado y de la Comisión Industrial conjuntamente, y por el médico que el obrero tuviere a bien traer y de la resolución que dictare la Comisión Industrial a base del informe médico que se rinda como resultado del examen practicado, la cual será firmada por un solo Comisionado, el obrero podrá solicitar una vista pública . . . ."

La Comisión interpretó la disposición citada al efecto de que, luego de celebrada la vista médica y sin que importe aparentemente lo que en ella suceda, tan solo se puede proceder a la celebración de una vista pública para resolver diferencias de opinión entre los peritos médicos cuando el obrero

así lo solicite. Esta novel interpretación es insostenible. Choca ella contra la práctica administrativa establecida y con modos menos mecánicos y literales de interpretar el estatuto en cuestión. Suscita serias dificultades constitucionales. Tendría la grave consecuencia de eliminar de hecho al Fondo del Seguro del Estado como parte en los procedimientos administrativos después de la vista médica y de privarle de presentar prueba para refutar testimonio pericial adverso a su decisión inicial.

■ Según surge de autos, la práctica seguida hasta ahora en los procedimientos siempre fue que, de surgir una discrepancia entre los peritos de la Comisión y del Fondo en la vista médica, se consignasen o no por escrito las bases de la diferencia, se procedía automáticamente a dirimir en vista pública el conflicto con amplia oportunidad tanto al obrero como al Fondo de ser oídos y confrontarse con la prueba contraria. La interpretación contemporánea o práctica de un estatuto es de notable valor para la precisión de su significado. 2 Sutherland, *Statutes and Statutory Construction*, 4th ed. (Sands), 1973, sec. 49.03.

La práctica establecida, en adición, concuerda con el lenguaje del estatuto, examinado a la luz de sus propósitos. El Art. 10 citado de la Ley de Compensaciones por Accidentes del Trabajo expresa inicialmente que el obrero puede apelar ante la Comisión Industrial de las determinaciones del Administrador del Fondo. Ya aquí se traba la controversia. El Fondo es obviamente parte de la misma. *Vide: Colón* v. *Comisión Industrial*, 52 D.P.R. 1 (1937). No se le puede borrar del récord; no se le puede ordenar, como al genio de Aladino, que regrese a la lámpara. Luego el estatuto requiere que se celebre una vista médica, sin que nadie tenga que solicitarla, de así exigirlo la naturaleza del caso. Entonces se expresa que, de no estar conforme el obrero con la resolución que en consecuencia dicte la Comisión, el obrero podrá solicitar una vista pública. ¿Significa esto que es solo el obrero el

que tiene el derecho de ventilar su inconformidad en esta forma? ¿Que de complacerle al obrero la resolución de la Comisión—como le complacería cualquier decisión a su favor—pierde el Fondo su derecho a ser oído? No hemos hallado nada en el historial legislativo de la disposición concernida que le atribuya tal significado, ni razón de otro orden que prive de oportunidad a ninguna de las partes a desfilar prueba y a contrainterrogar a los peritos contrarios sobre la controversia médica surgida.

El nuevo significado que la Comisión le imparte al citado Art. 10 conflige, además, con las normas de buen procedimiento administrativo generalmente reconocido en este campo. Se afirma en 3 Larson *Workmen's Compensation Law*, 1976, sec. 79.83, pág. 15-334:

> "Las reglas del juego limpio incluyen el derecho a contrainterrogar, las normas contra declaraciones *ex parte,* la necesidad de que toda la prueba conste en el récord, y la restricción de las determinaciones que se funden en investigaciones independientes que el Tribunal lleve a cabo. Estas reglas se basan en nociones fundamentales de justicia . . . ." (Traducción nuestra.)

Véanse, además, Davis, *Administrative Law of the Seventies*, 1976, pág. 241 y ss.; *Atiles, Admor.* v. *Comisión Industrial,* 63 D.P.R. 664 (1944).

Dadas las conclusiones que anteceden, es innecesario considerar los planteamientos que hace el Fondo respecto a la anticonstitucionalidad de los actos de la Comisión. El estatuto simplemente no sanciona tales actos.

■ No se ha argumentado, pero vale considerar si la acción del médico del Fondo, al no expresar, según la práctica, la razón de su disenso en el informe escrito sobre la vista médica constituyó una renuncia del derecho a vista por parte del Fondo. No lo estimamos así. Las renuncias deben ser claras y conscientes. Cuando se trata de derechos fundamentales surge de hecho una presunción contraria a la renuncia. *Edelman* v. *Jordan,* 415 U.S. 651 (1974); *Brady* v.

*United States,* 397 U.S. 742, 748 (1970); *Ohio Bell Tel. Co.* v. *Public Utility Commission,* 301 U.S. 292 (1937). Contrario a lo resuelto en la Comisión Industrial, el Fondo tiene derecho a que se diriman en vista pública, con su plena participación como parte, las controversias surgidas entre los médicos asesores de la Comisión y los del Fondo.

■ Todo lo anterior se aplica a tres de los casos—los de los señores Concepción Santiago Rodríguez, C.I. 76-3-5932; Rubén Heredia Ramos, C.I. 76-3-6464; y Juan Burgos Lacén, C.I. 76-3-7636; pero no al del señor Manuel Nieves Santana. El señor Nieves Santana solicitó únicamente, a distinción de los otros caballeros mencionados, tratamiento médico adicional. Tal tipo de caso se rige por una regla diferente, expuesta en 11 R.&R.P.R. sec. 8-5(d) la cual ordena en su parte pertinente:

"(d) . . . Cuando se radicare una apelación en la que se alegue por el obrero que necesita más tratamiento, o que el tratamiento que se le provee es inadecuado, el obrero será referido inmediatamente al asesor médico de la Comisión Industrial, quien lo examinará y rendirá un informe en triplicado. Si el informe es favorable al obrero, la Comisión ordenará al Administrador que le provea el tratamiento adecuado, y el Administrador, de acuerdo con lo dispuesto en el Art. 5 de la Ley [11 L.P.R.A. sec. 6], cumplirá con la orden de la Comisión sin demora alguna."

El Fondo no ha cuestionado la validez de esta disposición, que en modo alguno entraña la emisión de una orden para que se aumente el porcentaje de incapacidad.

En consecuencia *se dejan sin efecto las resoluciones recurridas, excepto que en el caso del señor Nieves Santana el Fondo procederá a brindarle, sujeto a las normas legales vigentes, tratamiento médico adicional.*

El Juez Asociado Señor Martín concurre en el resultado.