Opinión concurrente y disidente emitida por la
Jueza Asociada Señora Fiol Matta.
La parte peticionaria comparece ante este Tribunal para solicitar que revoquemos la sentencia del Tribunal de Apelaciones que determinó que no procedía la devolución de unos vídeos en la que aparece desnuda, debido a que ello no fue pactado en el acuerdo transaccional. La mayoría de este Tribunal, al resolver la presente controversia, ex-pone con gran claridad y acierto el carácter fundamental del derecho a la intimidad en Puerto Rico y cómo goza de la más alta protección constitucional. Sin embargo, confirma al foro apelativo y resuelve que el consentimiento de la peticionaria a la consignación de los vídeos en el tribunal como parte de una transacción implicaba, de por sí, una renuncia válida a su derecho constitucional de intimidad respecto a éstos. Por mi parte, aunque concurro plenamente con las conclusiones a las que llega la mayoría en cuanto a la extensión del derecho constitucional a la intimidad y dignidad de las personas, disiento de la determinación de confirmar la sentencia recurrida, por las razones que paso a exponer.
*861 I
El Código Civil de Puerto Rico, en su Art. 1709, define la transacción como “un contrato por el cual las partes, dando, prometiendo o reteniendo cada uno alguna cosa, evitan la provocación de un pleito o ponen término al que había comenzado”. 31 L.P.R.A. see. 4821. Como todo contrato, la transacción requiere el consentimiento consensual de las partes, una controversia como objeto y la causa, que consiste en la eliminación de la controversia mediante concesiones recíprocas entre las partes. Ñeca Mortg. Corp. v. A&W Dev. S.E., 137 D.P.R. 860, 870-871 (1995). De esto es importante recordar, en cuanto al presente caso, que la finalidad del contrato de transacción es evitar el inicio de un pleito o ponerle fin a uno pendiente.
Como bien señala la opinión de la mayoría, por su naturaleza, el contrato de transacción debe interpretarse de manera restrictiva, limitando rigurosamente la exégesis contractual a lo expresamente señalado en sus disposiciones. Rivera Rodríguez v. Rivera Reyes, 168 D.P.R. 193 (2006). Ello se debe a que las transacciones requieren de las partes “mutuos sacrificios de régimen excepcional ...”. íd., pág. 208. Por esta razón, el Art. 1714 del Código Civil de Puerto Rico determina expresamente el alcance que podemos darle a las disposiciones de una transacción y los límites de su objeto. Este artículo señala que este negocio “no comprende sino los objetos expresados determinantemente en ella, o que, por una inducción necesaria de sus palabras, deban reputarse comprendidos en la misma”. 31 L.P.R.A. see. 4826. Incluso podría ser necesario acudir a las normas generales sobre interpretación de contratos, particularmente las contenidas en los Arts. 1233 a 1241 del Código Civil de Puerto Rico. 31 L.P.R.A. sees. 3471-3479. Véase Sucn. Román v. Shelga Corp., 111 D.P.R. 782, 789 (1981).
De particular importancia para los hechos de este caso *862 es el segundo párrafo del Art. 1714, supra, que dispone que “[l]a renuncia general de derechos se entiende sólo de los que tienen relación con la disputa sobre [la cual] ha recaído la transacción”. Esta norma limita la interpretación que se le pueda dar a la renuncia de derechos. Como las transacciones suelen otorgarse durante circunstancias de tensión y con carácter complejo, el Código Civil de Puerto Rico establece que su interpretación debe ser lo más rigurosa posible, y a lo más que debe extenderse es a una “inducción necesaria” de las palabras. En cuanto a la renuncia de derechos, ésta debe ser limitada específicamente a la causa que dio lugar a la transacción. Incluso, se ha entendido que en la transacción “no cabe la renuncia abdicativa o declaración de voluntad por la cual el titular de un derecho se despoja de éste sin que exista concesión recíproca”. (Énfasis nuestro.) L.R. Rivera Rivera, El contrato de transacción: sus efectos en situaciones de solidaridad, San Juan, Ed. Jurídica Editores, 1998, pág. 46. Al respecto, Scaevola indica: “[u]na renuncia sin recompensa constituiría una liberalidad y no una transacción.” Q.M. Scaevola, Código Civil, Madrid, Ed. Reus, 1953, T. XXVIII, pág. 267.
La mayoría de este Tribunal resuelve correctamente que el derecho a la intimidad de la peticionaria se ante-pone a los intereses articulados por el recurrido. Sin duda alguna, la peticionaria tenía un derecho privilegiado, de carácter constitucional, a que su intimidad y dignidad fuesen respetadas y protegidas contra todo tipo de intromisión. La imagen desnuda de la señora Maldonado Carrero forma parte de la esfera privada de su persona e identidad que está reservada y aislada de la convivencia genérica con los demás miembros de la sociedad. Como algo propio de la peticionaria, su imagen no puede ser cedida o controlada por terceros a menos que ella lo autorice.
No obstante lo anterior, hemos resuelto que al igual que otros derechos, los de carácter constitucional son *863 renunciables. Ahora bien, cuando se trata de derechos fundamentales, como lo es el de la intimidad, surge una presunción contraria a la renuncia. F.S.E. v. Comisión Industrial, 105 D.P.R. 261, 265 (1976). Bajo nuestro ordenamiento constitucional, para que la renuncia sea válida debe ser voluntaria, con pleno conocimiento de causa, ex-presa y no presunta. También tiene que ser patente, específica e inequívoca. U.T.I.E.R. v. A.E.E., 149 D.P.R. 498, 508 (1999); P.R. Tel. Co. v. Martínez, 114 D.P.R. 328, 343 (1983); Pueblo v. Morales Romero, 100 D.P.R. 436, 439 (1972). Si la renuncia no cumple con estos requisitos, el derecho a la intimidad es incuestionablemente inviolable y permanece bajo el control de su titular.
II
La mayoría de este Tribunal resuelve que la peticionaria renunció a sus reclamos de carácter constitucional sobre la tenencia de los vídeos, “una vez consintió válidamente a que éstos fuesen consignados en el tribunal como parte de la transacción ...”. Opinión mayoritaria, pág. 856. De esa forma concluye que el acuerdo transaccional al que llegaron las partes para finalizar el pleito sobre interdicto provisional tuvo el efecto de una renuncia válida de la peticionaria a un reclamo de intimidad sobre los vídeos. Entiende que al consentir voluntariamente a la consignación de los vídeos, asesorada en todo momento por su abogado, la peticionaria también renunció, específicamente y con conocimiento, a ejercer cualquier derecho que pudiera tener sobre ellos.
Discrepo de esta conclusión. Debo destacar, primeramente, que la causa del acuerdo transaccional entre las partes era lograr que la peticionaria desistiera de la acción de interdicto que había presentado. La consignación de los vídeos no era la finalidad del negocio acordado entre las *864 partes, sino una de las condiciones accesorias a la causa contractual. Debemos recordar que un negocio de transacción no debe interpretarse más allá de la controversia que dio lugar al pleito que se busca evitar o concluir. Las disposiciones contractuales de la transacción deben ser interpretadas restrictivamente.
Sin embargo, la opinión mayoritaria resuelve que el acuerdo de transacción hizo las veces de una renuncia válida a los reclamos constitucionales de intimidad de la peticionaria. A mi entender, esto no se desprende del contrato, que sólo expresaba que la peticionaria desistía de la demanda de interdicto y el recurrido se comprometía a no utilizar los vídeos. La opinión de la mayoría también entiende que el consentimiento a la consignación implicó una renuncia absoluta de la peticionaria a todo derecho sobre la imagen contenida en los vídeos, pero no podemos olvidar que no fue ella quien se obligó a consignar. El acuerdo disponía que “los codemandados ... consignarían ... en sobre sellado ... el original del vídeo y su copia”. (Énfasis nuestro.) La consignación era la prestación a la cual se obligaron el recurrido y los demás codemandados en la acción del interdicto. La peticionaria no se obligó a consignar, sino que consintió a que el recurrido lo hiciera. Las circunstancias que rodean el acuerdo a lo sumo permiten concluir que la peticionaria permitió esto como una solución temporal al posible uso no autorizado que se le daría a los vídeos en las otras acciones judiciales.
Una interpretación restrictiva del acuerdo no nos puede llevar a concluir que la frase “desiste con perjuicio de la acción” y la aceptación de la peticionaria a que el recurrido consignara los vídeos reflejan una intención clara de renunciar a los derechos que la peticionaria pueda tener sobre los vídeos, tomados sin su consentimiento, en los que aparece desnuda. De una “inducción necesaria” de esta frase y de las prestaciones acordadas tampoco se desprende esta renuncia.
*865 Por otra parte, debemos recordar que la renuncia al derecho a la intimidad debe ser patente, específica e inequívoca, y que ante la ausencia de estos requisitos existe una presunción contraria a la renuncia. No surge de la estipulación una patente renuncia al derecho de la demandante a los vídeos; mucho menos una específica e inequívoca. A mi entender, la renuncia ni siquiera es implícita, por lo que no puedo coincidir con la decisión de la mayoría de asumir que la peticionaria renunció a los reclamos que pudiera tener sobre la imagen de ella desnuda. El resultado al que llega este Tribunal es aún más preocupante frente al inciso (D) del acuerdo de transacción:
... la parte demandante se reserva el derecho de presentar nuevamente la acción en contra de los codemandados, en el caso de que en algún proceso, sea civil o criminal que están pendientes o en cualquier otro que surja, o en cualquier lugar o publicación, se muestre o se utilice el vídeo objeto de esta acción, o las imágenes allí contenidas.
Esta disposición hace una reserva patente, específica e inequívoca de que la peticionaria puede reivindicar su derecho a la intimidad cuando sea amenazado por un uso no autorizado de los vídeos. Ante una reserva expresa de esta magnitud, no podemos hablar de una renuncia al derecho a la intimidad en el caso de autos.
El recurrido no tenía derecho real alguno sobre los vídeos por éstos constituir una intromisión irrazonable y no autorizada a la intimidad de la peticionaria. Por lo tanto, el compromiso a no utilizar los vídeos no puede ser equiparado a la alegada abdicación de la peticionaria a presentar cualquier reclamación reivindicatoria de sus derechos. Ante esta realidad, el Tribunal no podía reconocer la renuncia abdicativa de un derecho fundamental, pues no hubo una concesión recíproca.
Por último, debo expresar mi inquietud sobre el resultado práctico de este caso. El Tribunal impide que la peticionaria obtenga la posesión de los vídeos en los que apa *866 rece desnuda, y respecto a los cuales tiene un derecho constitucional a tener y controlar, para que el tribunal de instancia sea quien los custodie “en sobre sellado”, con miras a que la intimidad de la peticionaria “quede resguardada”. Además, se le impone al tribunal la obligación de tomar medidas para que terceros no tengan acceso al vídeo. Esta obligación abre la puerta a posibles reclamos de la peticionaria si el tribunal no cumple a cabalidad con esta responsabilidad.
Por las razones expuestas, concurro con las expresiones de la opinión mayoritaria sobre la naturaleza y extensión del derecho a la intimidad y dignidad de las personas, reconocido en nuestro ordenamiento constitucional, pero disiento del resultado al que llega la mayoría de este Tribunal. Por las razones que he expuesto, revocaría la sentencia recurrida.