Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel Especial

| LUIS SÁNCHEZ TORRES<br>Lesionado-Recurrido<br><br>PENNOCK GROWERS, INC.<br>Patrono<br><br>CORPORACIÓN DEL FONDO<br>DEL SEGURO DEL ESTADO<br>Asegurador-Recurrente<br><br>COMISIÓN INDUSTRIAL<br>DE PUERTO RICO<br>Agencia-Recurrida | TA2025RA00106 | *Revisión Judicial*<br>procedente de la<br>Comisión Industrial<br>de Puerto Rico<br><br>Caso C.I. Núm.<br>07-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-02<br><br>Caso C.F.S.E. Núm.<br>06-34-03827<br><br>Sobre:<br>Decisión Final<br>(Vista en su Fondo) |

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Adames Soto y el Juez Campos Pérez

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 17 de octubre de 2025.

I.

Solo acentuando los datos procesales concernientes al asunto ante nuestra consideración, en mayo de 2006, el Sr. Luis Sánchez Torres (señor Sánchez) se reportó a la Corporación del Fondo del Seguro del Estado, (CFSE), por causa de un accidente laboral. En respuesta, ese mismo mes la CFSE determinó que: las lesiones presentadas por el señor Sánchez no guardaban relación con el empleo; aunque le otorgó una incapacidad parcial permanente de cinco por ciento de las funciones fisiológicas generales por la condición de trauma cervical, y una incapacidad parcial permanente equivalente a la pérdida de un cinco por ciento de las funciones fisiológicas generales por la condición de trauma lumbar.

En desacuerdo con dicha determinación, el señor Sánchez instó apelación ante la Comisión Industrial de Puerto Rico, (la Comisión).

En consecuencia, pasado un tiempo considerable, el 3 de mayo de 2013, fue celebrada una vista pública ante el Oficial Examinador de la Comisión, a la que compareció el señor Sánchez con su abogado, y de igual forma estuvo representada la CFSE. Como resultado, fue emitido un Informe, acogido de manera íntegra por la Comisión mediante Resolución de 6 de agosto de 2013, en la que se dispuso revocar en parte la determinación de la CFSE apelada. En específico, se confirmó la decisión apelada con relación a las condiciones de bulging C5-C6 y enfermedad degenerativa cervical, por no guardar nexo con el trabajo, por lo que **fue ordenado el cierre y archivo del caso en este asunto**. Sin embargo, al revocar en parte la determinación apelada, la Comisión también determinó que la fractura por compresión T11, sí guardaba nexo con el trabajo, de modo que se asumiría jurisdicción respecto a la radiculopatía S1 bilateral. Además, la Comisión decidió aumentar la incapacidad previamente otorgada a unos porcientos especificados en la propia *Resolución*.

Pasados varios años, el 9 de noviembre de 2022, el señor Sánchez acudió nuevamente a la CFSE, mediante una *Moción solicitando incapacidad total permanente*.

Sin embargo, ante la inacción de la CFSE para atender la referida petición, el 24 de marzo de 2024, el señor Sánchez instó una *Moción solicitando vista pública* ante la Comisión, al amparo del Artículo 7 de la Ley Núm. 45-1935,[1] según enmendada, la Ley del Sistema de Compensaciones por Accidentes del Trabajo, 11 LPRA sec. 1, *et seq.*

En respuesta, el 26 de abril de 2024, fue celebrada una vista pública, ante el Oficial Examinador de la Comisión, a la cual compareció la CFSE representada por la licenciada Martínez Pagán. Según consta en el *Informe[2]*

---

[1] El artículo citado dispone que, si la CFSE demorara más de un mes en atender, sin justa causa, la decisión de un caso sometido ante su consideración, el obrero podrá recurrir ante la Comisión para que esta la compela a ello.

[2] Exhibit XII del apéndice de recurso de revisión judicial.

producto de dicha vista, fue atendida la solicitud presentada por el señor Sánchez para ser evaluado para la incapacidad total, por factores socio-económicos, indicando el Oficial Examinador que se concedería un término (a la CFSE) *para que cumplan esa parte*. Sobre esto, en el mismo *Informe* se dejó constancia de que **la representación de la CFSE *no tuvo nada que añadir***. De conformidad, el Oficial Examinador recomendó a la Comisión que ordenara a la CFSE que, dentro del término de cuarenta y cinco días, emitiera una decisión institucional sobre Incapacidad Total Permanente por Factores Socioeconómicos.

En consonancia, el 8 de mayo de 2024, la Comisión emitió su *Resolución*[3] aceptando la recomendación contenida en el *Informe* citado. Por tanto, ordenó a la CFSE a considerar la moción presentada por el señor Sánchez y emitir una decisión institucional sobre Incapacidad Total Permanente por Factores Socioeconómicos, dentro del término de cuarenta y cinco días de notificada la *Resolución*. Esta *Resolución* fue notificada a las partes el 30 de mayo de 2024, con inclusión de las advertencias para que, de algunas de estas estar inconformes, solicitar el remedio que estimaran adecuado.

Sin embargo, el 27 de septiembre de 2024, el señor Sánchez se vio obligado a nuevamente presentar otra *Solicitud para que se aplique el Artículo 7 de la Ley*[4] ante la Comisión, informándole que, a pesar de la Orden dirigida a la CFSE, contenida en la *Resolución* notificada a las partes el 30 de mayo de 2024, esta *no ha hecho nada*. Por tanto, solicitó a la Comisión que compeliera a la CFSE a cumplir con la Orden de 30 de mayo de 2024.

A raíz de lo cual, fue celebrada otra vista pública ante el Oficial Examinador de la Comisión, el 19 de febrero de 2025, a la que asistieron las partes junto a sus abogados, (aunque, en esta ocasión, la CFSE fue

---

[3] Id.

[4] Exhibit XIII del recurso de revisión judicial.

representada por un abogado distinto, el licenciado Álamo Pérez). Surge del *Informe* rendido, que, una vez fue indicado el propósito de la vista, (verificar el cumplimiento de la CFSE con la Orden de 30 de mayo de 2024, para que el señor Sánchez fuera evaluado por el Comité de Factores Socioeconómicos), por primera vez la representación legal de la CFSE arguyó que, *al evaluar el expediente surge que en este caso finalizaron los asuntos médicos desde el 2013*, por lo que la petición hecha por el señor Sánchez, *es inoficiosa y fuera de jurisdicción.*[5] Ripostó la representación legal del señor Sánchez que ante la atención del Oficial Examinador se encontraban dos casos sobre el señor Sánchez, y esta era la tercera vista celebrada ante la Comisión sobre el asunto, sin que antes la CFSE hubiese levantado ninguno de los argumentos que ahora sostiene.

Visto lo cual, la Comisión emitió una *Resolución*, el 24 de febrero de 2025, **ordenándole a la CFSE el cumplimiento de lo que se le mandó en la Resolución de 30 de mayo de 2024**. Es decir, reiteró su *Orden* a la CFSE de 30 de mayo de 2024, para que se refiriera al señor Sánchez a ser evaluado por el Comité de Factores Socio Económicos sobre su solicitud de incapacidad permanente.

Insatisfecho, la CFSE instó *Reconsideración* ante la Comisión. En lo esencial, esgrimió que la Comisión había incidido al ordenar a la CFSE que actuara sobre un caso, el del señor Sánchez, que había sido resuelto y cerrado definitivamente desde el 2013, lo que resultaba contrario al término de tres años establecido en la Ley Núm. 314-1999.

Luego de la Comisión notificar a las partes haber acogido la solicitud de reconsideración para dirimirla, el señor Sánchez instó escrito en oposición a reconsideración.

Es así como, el 11 de julio de 2025, la Comisión emitió la *Resolución en reconsideración*, cuya revocación nos solicita la CFSE. En este dictamen,

---

[5] Exhibit XIV del recurso de revisión judicial.

luego de la Comisión hacer un recuento sobre las incidencias procesales pertinentes, declaró *No Ha Lugar* la petición de la CFSE, **porque se pretendía la revocación de un dictamen advenido final y firme desde el 30 de mayo de 2024**, pasados los términos para haber cuestionado la Orden allí contenida. En específico, el fundamento o razonamiento por el cual la Comisión denegó la petición de reconsideración fue el siguiente:

> *El 30 de mayo de 2024 se notifica Resolución de Vista Pública donde se Ordena al Administrador de la Corporación del Fondo del Seguro del Estado que evalúe a la parte apelante (Sr. Sánchez) por el Comité de Factores Socioeconómicos para que se determine si el señor Sánchez es acreedor a una incapacidad total y permanente, Dicha Resolución no fue reconsiderada, por lo que lo resuelto es final y firme. El Asegurador está en la obligación de evaluar al Sr. Luis Sánchez Torres para que determine a través del Comité de factores socioeconómicos, si el mismo se encuentra incapacitado total y permanentemente...[6]*

Juzgando que la Comisión incidió al decidir de dicha manera, la CFSE acude ante nosotros, mediante recurso de revisión judicial, atribuyéndole los siguientes errores:

> Carece de jurisdicción la Honorable Comisión Industrial para atender la petición radicada en la presente reclamación, por la misma haber sido radicada fuera del término establecido para ello. Mediante Resolución notificada el 6 de agosto de 2013, la Comisión Industrial dispuso de todos los asuntos ante su consideración, por lo que la presentación de una Moción ante la CFSE, el 15 de noviembre de 2022, fuera del término en ley, resulta inoficiosa y un ejercicio colateral para evadir la falta de jurisdicción de este foro.

> Erró la Comisión Industrial al entrar en los méritos de una reclamación sin auscultar su jurisdicción. Mediante Resolución notificada el 6 de agosto de 2013, la Comisión Industrial dispuso de todos los asuntos ante su consideración, por lo que carecía de jurisdicción para considerar los méritos de la misma.

> Erró la Honorable Comisión Industrial al ordenar a la CFSE a evaluar a la parte obrera en exceso del término de caducidad de tres (3) años establecido en el artículo 3 (1)(a) de la Ley del Sistema de Compensaciones por Accidente de Trabajo, 11 L.P.R.A. §3, según enmendada.

> Erró la Comisión Industrial al ordenar a la CFSE a evaluar al lesionado a través del Comité de Factores Socio Económicos, sin establecer las bases mínimas y fundamentos, conforme a la jurisprudencia aplicable, en los que descansa para referir al lesionado al Comité de Factores Socioeconómicos.

---

[6] Exhibit XVIII del recurso de revisión judicial.

Luego de que le concediéramos término a la parte recurrida para oponerse al recurso instado por la CFSE, sin obtener respuesta, decidimos darlo por perfeccionado y pasar a resolverlo.

II.

a.

La Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, según enmendada, 3 LPRA sec. 9601 *et seq.*, establece el alcance de la revisión judicial sobre las determinaciones finales de las agencias. Tanto la referida ley, como la jurisprudencia interpretativa sobrevenida por esta, establecen que la función revisora de las decisiones administrativas concedida a los tribunales apelativos consiste esencialmente en determinar si la actuación de la agencia fue dictada dentro de las facultades que le fueron conferidas por la ley. *T–JAC v. Caguas Centrum Limited,* 148 DPR 70, 81 (1999). ***Los dictámenes de los organismos administrativos merecen la mayor deferencia judicial y su revisión se limita a determinar si la agencia actuó arbitraria, ilegalmente, o irrazonablemente en abuso a su discreción.*** *Pérez López v. Departamento de Corrección y Rehabilitación,* 208 DPR 656 (2022). (Énfasis provisto). Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran deferencia y consideraciones a las decisiones de los organismos administrativos en vista de la vasta experiencia y conocimiento especializado. *Oficina de Ética Gubernamental v. Martínez Giraud,* 210 DPR 79 (2022)*; Graciani Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019).

Al momento de revisar una decisión administrativa el criterio rector para los tribunales será **la razonabilidad** en la actuación de la agencia. *Oficina de Ética Gubernamental v. Martínez Giraud,* supra; *Rebollo Vda. de Liceaga v. Yiyi Motors, Motor Ambar, Inc.,* 161 DPR 69, 76 (2004). (Énfasis provisto). Conforme a la cual, habrá que determinar si la actuación de la agencia fue

arbitraria, ilegal, caprichosa o tan irrazonable que constituyó un abuso de discreción. *Mun. De San Juan v. CRIM*, 178 DPR 164, 175 (2010); *Costa Azul v. Comisión*, 170 DPR 847, 582 (2007).

Sin embargo, nuestro alto foro ha manifestado que los tribunales no podemos imprimirle un sello de corrección, so pretexto de deferencia, a las determinaciones de una agencia administrativa o interpretaciones irrazonables, ilegales, o, simplemente, contrarias a derecho. *Graciani Rodríguez v. Garage Isla Verde, LLC,* pág. 127. Por lo que el criterio administrativo no podrá prevalecer cuando la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual se aprobó la legislación y la política pública promueve. En este sentido, la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de injusticia. *Oficina de Ética Gubernamental v. Martínez Giraud,* supra.

En armonía con lo anterior, en *Vázquez v. Consejo de Titulares*, 2025 TSPR 56, 215 DPR ___ (2025) nuestro Tribunal Supremo acogió los fundamentos aportados en *Loper Bright Enterprises et al.,* v. *Raimondo*, 603 US 369 (2024), 144 S.Ct. 2444. En lo específico, el Tribunal Supremo marcó los límites a la deferencia que debemos concederle a las determinaciones de las agencias administrativas, haciendo la siguiente expresión:

> …concluimos que **la interpretación de la ley es una tarea que corresponde inherentemente a los tribunales**. Así, enfatizamos la necesidad de que los foros judiciales, en el ejercicio de su función revisora, actúen con el rigor que prescribe la LPAU, *supra.* Como corolario, al enfrentarse a un recurso de revisión judicial proveniente de una agencia administrativa, **será el deber de los tribunales revisar las conclusiones de derecho en todos sus aspectos**. No guiados por la deferencia automática a la que alude el DACo, sino que por los mecanismos interpretativos propios del Poder Judicial. *Íd.* (Énfasis provisto).

b.

Por otra parte, la Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 de 18 de abril de 1935 (Ley 45), según enmendada, 11 LPRA sec. 1, *et seq.*, es una legislación de carácter remedial que le brinda

ciertas garantías y beneficios al obrero en el contexto de accidentes o enfermedades ocupacionales que ocurren en el escenario del trabajo. *Hernández Morales et al. v. CFSE*, 183 DPR 232, 240 (2011), citando a *Toro v. Policía*, 159 DPR 339, 352-353 (2003). Dicho estatuto establece un sistema de seguro compulsorio y exclusivo para compensar a los obreros que sufran lesiones o enfermedades en el curso del empleo, brindándoles un remedio rápido, eficiente y libre de las complejidades de una reclamación ordinaria en daños. *Hernández Morales*, supra, citando a *Toro v. Policia*, supra, pág. 353.

En aras de implantar los fines de la ley, se crearon dos organismos: la CFSE y la Comisión. 11 LPRA sec. 8; *Agosto Serrano v. F.S.E.*, 132 DPR 866, 874 (1993). La CFSE es el foro primario donde se dilucida si un obrero es elegible o no a los beneficios que establece la ley. Se encarga de la investigación de las reclamaciones por accidentes del trabajo, de la rehabilitación a través de servicios médicos y del pago de compensación por incapacidad parcial o total. *Agosto Serrano*, supra. Respecto a la incapacidad, establece la ley:

> Se considerará incapacidad total la pérdida total y permanente [...] la pérdida de una mano o un pie; perturbaciones mentales totales que sean incurables, y las lesiones que tengan por consecuencia la incapacidad total y permanente del obrero o empleado, para hacer toda clase de trabajo u ocupaciones remunerativas. Art. 3, 11 LPRA sec. 3(d).

La Comisión, por otro lado, es un organismo de carácter fundamentalmente adjudicativo y revisor, con funciones de naturaleza cuasi judicial y cuasi tutelar. Este organismo investiga y resuelve todos los casos de accidentes en los que el Fondo y el obrero o empleado lesionado no lleguen a un acuerdo respecto a la compensación. Art. 6, 11 LPRA sec. 8; *Rivera González v. F.S.E.*, 112 DPR 670, 674 (1982). La Comisión funge como "tribunal apelativo del Fondo del Seguro del Estado a nivel administrativo". *Agosto Serrano*, supra; *Baerga Rodríguez v. FSE*, 132 DPR 524, 531 (1993). Es quien dirime, en primera instancia, las contiendas entre

el Administrador y los obreros o sus beneficiarios, y es el árbitro final de los derechos de estos a nivel administrativo. *Agosto Serrano*, supra, pág. 875. ***La determinación de si un obrero o empleado es elegible o no a los beneficios de una incapacidad total dentro del contexto del artículo 3 de la Ley de Compensación de Obreros, (11 LPRA sec. 3), es claramente un asunto que le compete a la Comisión como árbitro final de los derechos de los obreros a nivel administrativo***. *Id.*, págs. 875-876. (Énfasis provisto).

Por otro lado, como parte de los componentes de la CFSE se concibió el Comité de Factores Socio Económicos (el *Comité*). El *Comité* fue creado en virtud del Reglamento Núm. 3470 de 12 de junio de 1987, *Reglamento sobre Factores Socio Económicos.* El fin del Comité es "establecer las bases que permitan la uniformidad en el estudio, análisis y determinación de los casos en los que exista la posibilidad de una incapacidad total permanente por factores socio-económicos." Sec. 19 del Reglamento Núm. 3966 de 8 de agosto de 1989, *Reglamento Sobre Derechos de Obreros y Empleados* (el Reglamento). El Comité es una estructura administrativa creada en cada Oficina Regional de la CFSE que ayuda a dicha corporación en la función fundamental de evaluar la capacidad de un obrero lesionado para realizar un empleo remunerativo. *Agosto Serrano*, supra, pág. 87; Sec. 19 del Reglamento.

c.

En cuanto a la reapertura de los casos, inicialmente la Ley Núm. 45 no contemplaba propiamente tal concepto. Empero, el Artículo 37 disponía que los casos quedarían cerrados definitivamente a los quince (15) años desde la última resolución dictada. Sin embargo, en el 1999 se aprobó la Ley Núm. 314, a los efectos de enmendar lo relacionado con las reaperturas de los casos ante la CFSE. El propósito de dicha enmienda fue "establecer un término fijo dentro del cual se pueda reabrir un caso, que a su vez sea efectivo

y práctico." Exposición de Motivos de la Ley Núm. 314. En virtud de ello, la Ley Núm. 314 dispuso que solo se tramitarían solicitudes de reapertura que fueran radicadas dentro de un término de tres (3) años contados a partir de la fecha del cierre definitivo de la reclamación. Tal enmienda se refleja en varios artículos de la Ley Núm. 45. De este modo, se le añadieron al Artículo 3(a) los siguientes incisos:

> (1) Las reclamaciones obreras quedarán cerradas para todo (*sic*) los efectos legales, una vez transcurridos tres (3) años desde el cierre definitivo del caso, excepto en las siguientes condiciones en que el efecto puede producirse después de transcurrido un lapso mayor:
>
> (A) Cito Tóxicos
> (B) Exposición a asbesto
> (C) Exposición a mercurio
> (D) Exposición a plomo
> (E) Exposición a cadmio
> (F) Exposición a radium
> (G) SIDA
> (H) Hepatitis C
> (I) Exposición a berilio

Estas condiciones se evaluarán de acuerdo a los protocolos médicos establecidos.

> (2) Solamente se tramitarán solicitudes de reapertura que sean radicadas dentro de un término que no excederá de tres (3) años contados a partir de la fecha del cierre definitivo de la reclamación, sujeto a las siguientes condiciones:

> (A) Que exista evidencia médica, clara y convincente, de la agravación o recaída.
> (B) Que la lesión originalmente compensada haya sido la causa única de dicha agravación o recaída sin intervención de factor o causa ajena alguna al accidente original.
> (C) Cuando se trate de alegaciones, por condiciones secundarias, éstas tienen que haber sido ocasionadas, precipitadas o agravadas por la condición original, sin la intervención de agente alguno diferente al accidente original.
> (D) Que el obrero o empleado lesionado haga solicitud de reapertura por escrito. 11 L.P.R.A. sec. 3.

De igual manera, el Artículo 37 fue enmendado como sigue:

> Observando lo dispuesto en otras leyes concernientes a la conservación y preservación de documentos, se entenderá que quedarán cerrados para todos los efectos legales, todos los casos de accidentes del trabajo y enfermedades ocupacionales una vez transcurridos tres (3) años desde el cierre definitivo del mismo. 11 L.P.R.A. sec. 38.

III.

i.

Los señalamientos de error alzados por la CFSE están íntimamente relacionados, por lo que son susceptibles de discusión conjunta, así obraremos. El argumento principal enarbolado por la CFSE es resumible a lo siguiente: 1) el Art. 3 de la Ley Núm. 314-1999 manda que solamente se tramiten solicitudes de reapertura que sean radicadas dentro de un término que no excederá de tres años, contados a partir de la fecha del cierre definitivo de la reclamación; 2) el cierre definitivo de la reclamación en este caso ocurrió el 6 de agosto de 2013, mediante *Resolución* emitida por la Comisión; 3) la petición de reapertura del caso del señor Sánchez, solicitando ser considerado para una incapacidad total y permanente, data de noviembre de 2022; 4) por tanto, al momento de la presentación de dicha solicitud había pasado con creces el término de tres años para que la Comisión tuviera jurisdicción para ordenar la reapertura del caso.

No obstante, al considerar el razonamiento expuesto en la *Resolución en reconsideración* dictada por la Comisión, es evidente que dicho foro administrativo no admitió tal argumento de la CFSE, por juzgarlo tardío. En específico, la Comisión llamó la atención al hecho de que había adjudicado la solicitud del señor Sánchez para ser referido a evaluación por la CFSE sobre incapacidad total por factores económicos, el 30 de mayo de 2024, mediante *Resolución* que no fue reconsiderada. Sin embargo, se intima en la *Resolución* recurrida que la CFSE pretendió traer el argumento de derecho sobre la aplicación del término contenido en el Art. 3 de la Ley Núm. 314-1999, por primera vez, el 19 de febrero de 2025, fecha para la cual la Resolución de 30 de mayo de 2024 había advenido final y firme.

ii.

Primero, resulta evidente que la CFSE no discutió el fundamento específico que ofreció la Comisión para denegar su moción de

reconsideración. Es decir, la CFSE no elaboró sobre por qué este foro intermedio debía revocar una determinación de 30 de mayo de 2024 que, a todas luces, era final y firme. ¿Deberíamos tomar su *Reconsideración* de 14 de abril de 2025 como una moción de nueva vista administrativa? Nada dijo sobre ello.

Lo cierto es que, en la vista celebrada ante el Oficial Examinador de la Comisión el 30 de mayo de 2024, **la CFSE estuvo debidamente representada por abogada, pero no levantó argumento alguno sobre la aplicación a este caso del término dispuesto en el Art. 3 de la Ley Núm. 314-1999**, *supra.* Al contrario, habiendo determinado la Comisión ordenar a la CFSE evaluar la petición del señor Sánchez, la representación legal de la CFSE *no tuvo nada que añadir[7],* según se hizo constar en el *Informe* sobre dicha vista. Más aún, la CFSE tuvo oportunidad de oponer el término de tres años para tramitar solicitudes de reapertura que manda el Art. 3 de la Ley Núm. 314-1999 desde, al menos, noviembre de 2022, cuando el señor Sánchez le solicitó por primera vez ser considerado para una incapacidad total, pero vino a levantar tal argumento en el 2025, cuando ya la Comisión le había ordenado tal curso decisorio mediante una *Resolución* final y firme del 2024. Además, en la *Resolución* de la Comisión de 8 de mayo de 2024, donde se adjudicó en favor del señor Sánchez su pedido, se incluyeron expresamente las advertencias sobre los remedios que tenían a su favor las partes, y los términos en los que podrían ser ejercitados, de estar en desacuerdo con dicho dictamen. Sin embargo, la CFSE no presentó una petición de reconsideración ante la Comisión, ni recurso de revisión judicial ante este Tribunal de Apelaciones, de modo que, en efecto, permitió que la *Orden* para que el señor Sánchez fuera evaluado nuevamente por la CFSE tornara en final y firme.

---

[7] Exhibit XII del recurso de revisión judicial.

Sépase que, para efectos de los procesos de apelación conducidos ante la Comisión, la CFSE se considera una parte, *Fondo de Seguro del Estado v. Comisión Industrial,* 105 DPR 261, 264 (1976), de modo que está sujeta a los términos para solicitar reconsideración sobre las determinaciones que le sean adversas, o recurrir ante nosotros, según lo ordena la Sección 3.19 o 4.2 de la LPAU, respectivamente. Es decir, no incidió la Comisión al decidir que la Orden que emitió el 30 de mayo de 2024 para que el Comité de Factores Socioeconómicos evaluara si el señor Sánchez es acreedor de una incapacidad total, había advenido en final y firme al momento en que se planteó la presunta imposibilidad legal de ello por infracción al término establecido por el Art. 3 de la Ley Núm. 314-1999.

iii.

Con todo, bien vale la pena referirnos brevemente a la premisa de la CFSE según la cual, por virtud del término que establece el Art. 3 la Ley Núm. 314-1999, *supra,* para reabrir una reclamación a partir del *cierre definitivo* de un caso, la Comisión no tenía jurisdicción para evaluar la petición de reapertura instada por el señor Sánchez en la fecha en que lo hizo. En específico, la CFSE asevera que la Comisión había dispuesto de todos los asuntos ante su consideración sobre el señor Sánchez mediante **Resolución notificada a las partes el 6 de agosto de 2013**, por tanto, cuando este solicitó ser evaluado por el Comité de Factores Socioeconómicos, el 15 de noviembre de 2022, ya había transcurrido el límite de tres años para admitir tal solicitud.

Sin duda, el Art. 3 la Ley Núm. 314-1999, *supra,* dispone que las reclamaciones obreras quedarán cerradas para todos los efectos legales, una vez transcurridos tres años desde el *cierre definitivo del caso*. No obstante, al examinar la *Resolución* emitida por la Comisión, que la CFSE identifica como que marcó *el cierre definitivo* del caso, notificada el 13 de agosto del 2013, tal *cierre definitivo* no nos resulta aparente. Nos explicamos.

En la referida *Resolución* la Comisión ordenó expresamente **el cierre y el archivo del caso** en cuanto a las condiciones de *bulging* C5-C6 y C6-C7, y la enfermedad degenerativa discal cervical, por no guardar nexo causal con el trabajo del señor Sánchez.[8] Sin embargo, asumió jurisdicción sobre la condición de radiculopatía S1 bilateral, determinando que sí guardaba nexo causal con el trabajo del señor Sánchez, para lo cual aumentó el porciento de la incapacidad que le había reconocido la CFSE. A diferencia de su indudable determinación sobre el cierre y archivo de las condiciones de *bulging* C5-C6 y C6-C7, la Comisión no hizo constar en la *Resolución* de 6 de agosto de 2013 una orden de cierre y archivo con relación a la condición en que sí asumió jurisdicción, y tampoco se nos puso en posición de llegar a esta conclusión, en ausencia de expresión clara al respecto. Por esta razón afirmamos que no resulta aparente que la Comisión dispusiera del *cierre definitivo* del caso del señor Sánchez, partiendo del contenido de su *Resolución* de 6 de agosto de 2013, ante lo cual, cabe reconocer la pericia del foro administrativo revisado al así disponer.

**Parte dispositiva**

Por las razones expresadas, hemos decidido *confirmar* la Resolución recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[8] *Resolución en reconsideración* de la Comisión, Exhibit XVIII del recurso de revisión judicial.